# Richmond

## CITY OF LYNCHBURG v. COUNTY OF AMHERST.

### November 20, 1913.

1. COUNTIES—*Bridge Outside County—Power to Purchase and Maintain—Special Act.*—While a county has no power to expend money on the maintenance of a bridge outside of its territorial limits, yet where a special act authorizes a county and a city to purchase a bridge connecting the two, and "to determine and fix the terms and conditions on which the bridge was to be used," an agreement between them for the purchase of the bridge, and to make it a free bridge, and fixing the terms and conditions on which repairs are to be made, is not beyond the powers of the county.

2. COUNTIES—*Bridge Outside County—Repairs—Agreement With Joint Owner—Expenditures Not Authorized—Power to Pay.*—A county and a city having entered into an agreement, pursuant to a special act of Assembly, that the expense of keeping in repair a connecting bridge shall be borne by them equally, but also providing that repairs in excess of $100.00 at any one time shall be made as may from time to time be agreed on by the county and city, the county is not bound for repairs in excess of $100.00 at any one time made by the city without the consent and approval of the county. The county had no authority to expend any money on the bridge outside its territorial limits, except as conferred by the special act of Assembly and the agreement made in pursuance thereof, and its representatives are| not only under no obligation to pay any part of the expense of repairs paid by the city not authorized by said agreement, but they have no authority to pay the same or any part thereof.

3. COUNTIES—*Bridge Connecting City—Watchman—Ratification of Previous Appointment—Case at Bar.*—A county having agreed to pay one-half of the expenses of a watchman for a bridge connecting the county with an adjacent city, if it shall be deemed necessary by the council of the city to employ a watchman, the necessity for the employment of the watchman must be determined by the council before his employment. A resolution of the council passed years after the expense had been

incurred is not sufficient. .The fact that members of the council knew that the watchman was being employed is immaterial. A city council can only act at authorized meetings duly held, and not separately and individually.

4. Interest—*Liability For—Private Persons—State—Counties.*—As a rule the common law did not imply a promise to pay interest, and interest could not be recovered save where it was expressly contracted for; and, while a different rule prevails in this State as between natural persons and private corporations, it has not been extended to claims against the State or a county where there is no provision in the statute or authorized agreement creating the liability for the payment of interest. Claims disallowed by the supervisors of a county do not bear interest in the absence of some authorized agreement for its payment.

5. Joint Property—*Powers Over—Private Persons—Cities—Counties.*— There is marked difference between the rights and duties of natural persons in respect to their joint property and the rights and duties which exist between a city and a county as to their joint property. Natural persons can do anything in respect to their common property not forbidden expressly or impliedly by law. In the case of a city and a county in reference to their joint property, the powers possessed and the duties imposed are all statutory. They are only such as are expressly provided by the statutes or necessarily implied, and this is especially true with reference to a county which is a mere sub-division of the State.

Error to a judgment of the Circuit Court of Amherst county on an appeal from an order of the board of supervisors of said county. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*N. C. Manson, Jr.,* for the plaintiff in error.

*Whitehead & Whitehead, O. L. Evans* and *Aubrey E. Strode,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

By an act of the General Assembly, approved January 14, 1882 (Acts 1881-2, pages 15-16), the city of Lynchburg and the county of Amherst were authorized to purchase a toll bridge across James river at Lynchburg, and "to determine and fix the amount of purchase money to be paid by each of them, and the terms and conditions upon which the bridge was to be used." The bridge was purchased at the price of $25,000, the city and county each paying one-half the purchase price. By the agreement between them under which the purchase was made, it was provided that the bridge and franchises should be held by them as joint owners, each being seized of an undivided moiety thereof. It was further provided:

"2nd. The expense of keeping said bridge in good repair shall be borne equally by the parties of the second and third parts in the following manner; that is to say, all repairs to the said property, as and when the same shall become necessary, provided the same shall not exceed the cost of one hundred dollars at any one time, shall be made by the city of Lynchburg and under the superintendence of its proper officers, and be, in the first instance, paid by the said city; and the county of Amherst shall and will repay to the said city, without delay, one-half of such expenses upon the same being certified to the board of supervisors by direction of the council of said city, and the said city shall have the power to rent out the toll house and store or stall adjoining the same, collect the rents and apply them to the expense of keeping the said property in repair as aforesaid, and will account for all such rents so collected, or which by due diligence might have been so collected, in the accounts of expenses and repairs so above provided to be rendered and certified.

"3rd. If it shall be deemed necessary by the council of said city for the safety and preservation of the said joint property to appoint or employ a watchman, the

amount of salary or compensation paid or furnished him shall enter into and be a part of the accounts so to be certified and settled.

"4th. Repairs exceeding a cost of $100.00 at any one time shall be made as may from time to time be agreed on by the council of said city and the board of supervisors of said county."

About the year 1908 differences arose between the city and the county as to certain claims presented by the city to the board of supervisors of the county for payment for money paid by the city. The claims presented by the city aggregated $2,716.27 and were made up of items for repairs costing over $100 at one time, and for services of a watchman at the bridge. The board of supervisors refused to allow as proper charges against the county either of the claims.

The county insists that this action was proper because the agreement between the city and county, so far as it provided for repairing and guarding the bridge by the county, was *ultra vires* and void.

It is true, as argued by the counsel of the county, that the bridge is almost entirely within the city of Lynchburg, and that under the general law the county did not have the right to expend money in caring for and guarding such a bridge outside of its territorial limits. But it is equally true that under the general law the county did not have the power to unite with the city in purchasing the bridge. The same special act which authorized the city and county to make the purchase also authorized them "to determine and fix the terms and conditions on which the bridge was to be used." It is conceded that the county was acting within the power conferred by the act of Assembly in purchasing and making the bridge a free bridge. It seems to us clear that when they purchased the bridge and did away with the tolls by which it was kept up they had the

right under their authority "to determine and fix the terms and conditions on which the bridge was to be used"—to agree how the bridge was to be kept in condition for use and in what manner the expenses therefor were to be incurred and paid. The act of Assembly was their only authority for its purchase, and by the agreement which it authorized them to make their rights in the property and their duties and obligations to each other in reference to it were to be, and were, fixed. The general law neither authorized its purchase nor provided how property acquired in that way was to be cared for by them.

We are of opinion that the agreement between the city and county for caring for the bridge was not *ultra vires.*

It is conceded by the county that if this be so the county is liable for the claim of $181.16 asserted by the city for repairs to the bridge costing $100 and under at one time, and that the trial court did not err in so holding. The county denies its liability for the other two claims asserted by the city upon the further ground that they were incurred in violation of the terms of the contract between it and the city. By that agreement repairs exceeding a cost of $100 at any one time were to be made "as may from time to time be agreed upon by the council of the city and the board of supervisors of the county." It appears that the cost of repairs made by the city, at a cost of more than $100 at a time, aggregate $2,885.48 (one-half of which it claims the county should pay), and were never agreed upon by the city council and the board of supervisors either before or after they were made. Indeed, more than half of that sum was expended by the city without even notice to the county that it was to be expended.

It is true, as argued by counsel of the city, that the agreement provided that the expense of keeping the bridge in repair should be borne equally by them, but the agreement further provided that the expenditures for that pur-

pose should be made in the manner set out therein.   The city had the right to make repairs costing $100 and less at any one time without the consent of the county, and the county, as we have seen, was bound to pay one-half the expenses of such repairs.   But the city, under the contract, had no right to make any repairs which cost more than $100 at any one time unless such repairs were agreed to by the county.   The county had not only not agreed to the expenditures for this item of repair, but gave as an additional reason for refusing to pay the claim when presented that the bridge was beyond repair, and that it was injudicious to expend sums upon it in excess of $100 at any one time.

The court, at the instance of the county, gave the following instructions:

"(1) No recovery can be had by the city against the county for any item in the accounts sued upon covering expenditures in excess of one hundred dollars at any one time for repairs not agreed to by the board of supervisors of the county."

"(5) The city had no right to repair and charge the county for one-half thereof after the board of supervisors of the county had declared that the bridge was beyond repair and declined to contribute to further repairs, except as to expenditures for repairs not exceeding one hundred dollars at one time."

These instructions correctly stated the law, in our view, and the court did not err in giving them.   Nor did it err in refusing to give instructions Nos. 4 and 5 offered by the city, which were based upon the theory that although the county had not agreed to such expenditures for repairs, yet, if they were necessary for the use and preservation of the bridge, or the county had notice that such expenditues were going to be made, it would be liable.   The board of supervisors, under the general law, had no authority

to expend money upon property so acquired lying outside the county. Having no authority to expend money upon the bridge except by virtue of the agreement, and the repairs made by the city not having been made in accordance therewith, the county was not only under no obligation, but had no authority to pay any part thereof; for its authority and that of its representative, the board of supervisors, is derived solely from statute, and neither has any power other than those expressly conferred or necessarily implied. *Roper* v. *McWharter*, 77 Va. 214; *Supervisors* v. *Powell*, 95 Va. 635, 29 S. E. 682; *County of Alleghany* v. *Parrish*, 93 Va. 621, 25 S. E. 882.

As to the claim for the services of a watchman at the bridge: Upon this question the court, upon the motion of the plaintiff, gave the following instruction:

2. "The court instructs the jury that if they believe from the evidence that the payment of watchman's services was submitted to the council by the engineer and that the employment of the watchman and his payment was subsequently approved by the council, then they must find for the city as to one-half of the amounts paid by the city for watchman's services."

The contract provides that if it should be deemed necessary by the city council for the safety and preservation of the bridge to employ a watchman, the county was to pay one-half of his compensation. It is not shown that the members of the council, in session, ever considered the question of employing a watchman for the bridge until February, 1912, after this action had been instituted, when the council, in meeting, by resolution declared that a watchman was deemed necessary for the safety of the bridge, and ratified and confirmed the employment of a watchman since November 1, 1906.

It is argued by the counsel of the city that if the employment of a watchman was in fact necessary, the question

of whether or not his employment was deemed necessary by the council was an unimportant detail, and that the county was in no manner prejudiced by the failure of the council to pass a formal resolution to that effect before he was employed, especially as the members of the council from the reports made by the city officials from year to year were fully informed that payments were being made for a watchman's services, and, therefore, they must have deemed his employment necessary, since no objection was made by them to such payments.

What the members of the council knew individually, or may have said or done separately, can have no bearing upon the question under consideration.   Whether or not a watchman was necessary was to be determined, under the contract, by the council of the city, and nothing is better settled than that a city council can only act at authorized meetings duly held and not separately and individually.   2 Dillon on Mun. Corp. (3rd ed.), section 501.

Under the agreement between the city and county the latter has no voice in passing upon the question whether or not a watchman is necessary.   The determination of that question is left solely to the city council, and its judgment is conclusive upon the county.   This being so, it was clearly the duty of the council to ascertain whether or not a watchman was necessary before he was employed.   Its declaration years afterwards, and after the cost of employing him had been incurred and would have to be borne entirely by the city unless it could declare that it deemed the watchman's employment necessary, was not such an expression of opinion by the council as the county under its contract was entitled to have.

It follows from what has been said in discussing this question that the instruction given by the court was erroneous.

The city also assigns as error the refusal of the court to instruct the jury that items of account sued for, which they found in favor of the city, must bear interest from the date such items were rejected by the board of supervisors of the county.

As a rule, the common law did not imply a promise to pay interest, and interest could not be recovered, save where it was expressly contracted for. 4 Minor's Inst. (1st ed.) 738, and authorities cited. While the courts in this State, aided by the legislature, have established a different doctrine as between natural persons and private corporations, viz., that it is but natural justice that he who has the use of another's money should pay interest on it (4 Minor's Inst. 738, and cases cited), yet, so far as we know, it has never been held by this court that a claim asserted against the State or a county bears interest where there is no provision in the statute or authorized agreement creating the liability for the payment of interest. Not only is there no statute or precedent for the payment of interest on claims like those asserted in this case, but clause 2, section 834 of Pollard's Code, which provides for the examination, settlement and allowance of all accounts chargeable against the county and for the issuance of warrants therefor when settled and allowed, expressly declares that no interest shall be paid by any county on any county warrant. If the board of supervisors had allowed the claims of the city, or any of them, and issued a warrant therefor, and the county afterwards refused to pay the claim and litigated its liability, as it had the right to do (Code, section 843), and judgment had been rendered against it for the amount of the warrant so issued, by the plain terms of the statute, it would not have been chargeable with interest. This being so, it is difficult to see upon what ground the county would be liable for in-

terest on the same claims when disallowed by the board of supervisors. The instruction was properly refused.

The counsel of the city, in his written and oral arguments, insisted, as we understood him, that, as the city and county were joint owners of the bridge, their rights and obligations should be determined upon the same principles as if they were natural persons who were joint tenants or tenants in common.

There is a marked difference between the rights and duties of natural persons in regard to their joint property and the rights and duties which exist between a city (a municipal corporation) and a county (a *quasi* corporation) as to their joint property. In the case of natural persons, they can do anything expressly or impliedly in reference to the common property not forbidden by law. In the case of a city and a county, in reference to their joint property, the powers possessed and the duties imposed are all statutory. They are, as we have seen, only such as are expressly provided by the statutes or necessarily implied, and especially is this so with reference to a county which is a mere subdivision of the State.

The judgment complained of must be reversed for the error of the trial court in giving instruction No. 2, asked for by the plaintiff city, the verdict of the jury set aside and the cause remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*