BOARD OF SUPERVISORS OF CULPEPER COUNTY v. COONS
(No. 1).

COONS v. BOARD OF SUPERVISORS OF CULPEPER COUNTY
(No. 2).

November 15, 1917.

1. COUNTIES — *County Officers — Compensation — Discretion of the Board of Supervisors.*—A board of supervisors may not withhold action fixing the amount of, or what is the same thing in effect, place a condition or conditions upon the payment of the salary or compensation allowed by law to an officer whose office or position is not created by the board of supervisors but by law. Such an office or position is not the creature of the board of supervisors but of the law. By the law, therefore, and not by the board of supervisors, except as they may act in accordance with the law, must the salary or compensation of such office or position be fixed. For any failure of such an officer to discharge his duties which are prescribed by law, the remedy of mandamus will lie. To allow boards of supervisors to withhold any action aforesaid, or to place a condition or conditions upon the payment of the salary or compensation aforesaid, would be to allow such boards to nullify the election of the officer to the extent of the emoluments of the office allowed by law thus denied him.

2. CLERKS OF COURT—*Discretion of Board of Supervisors in Fixing Compensation.*—The board of supervisors of a county has no discretion to refuse to act in fixing the compensation and other allowances of a county clerk allowed by law *at something,* within the limits prescribed by statute; nor, if it acts, to impose a condition or conditions upon the payment of such compensation, on the ground that the clerk has not performed, or is not performing his duties as such.

3. COUNTIES—*County Officers—Discretion of Board of Supervisors— Time of Payment of Salary.*—A board of supervisors undoubtedly has a discretion as to fixing the time or times of payment of salaries and allowances of county officers, if exercised for good and sufficient cause—such as the condition of the county

treasury in the lack of funds to pay same at a certain time or times in the year, because of some situation against which the board did not and could not reasonably have been expected to provide in the next preceding laying of the county levy, or the like cause, operating impersonally. The board of supervisors of a county has no discretion to fix a different time of payment of the annual salary and other allowances provided for by law of a county clerk from the times of payment of salaries and allowances of other county officers allowed by law, on the ground that the clerk is not discharging or has not discharged his duty as such.

4. COUNTY OFFICERS—*Interest on Back Salary and Allowances.*—An obligation of a county of the State to a clerk for the unpaid amount of allowances made him by order of the board of supervisors, bears no interest.

5. CLERKS OF COURT—*Extra Compensation for Current General Index.*—The extra allowance allowed in section 3184, Code of 1887, as amended by Acts of Assembly, 1891-2, p. 772, to a clerk of court or other suitable person for preparing a general index to the deed books, will books, etc., in the clerk's office, applies only to some person, not necessarily the clerk, specially appointed by the court to make the general index mentioned in the statute, and does not apply to the current general indexing subsequent to the order of the court making such appointment. In the instant case it was the duty of the clerk to do the current general indexing and he was not entitled to any extra compensation therefor other than his salary as county clerk. An order of court allowing such extra compensation would be without authority of law, and the board of supervisors would have no authority thereunder to "direct warrant therefor" or otherwise authorize such payment out of the county treasury.

6. CLERKS OF COURT—*Duty as to Indexing.*—An order was entered under section 3184, Code of 1887, as amended by Acts of Assembly, 1891-2, page 772, by which the clerk was appointed to make the general index to the deed books, will books, etc., in the clerk's office. Prior to such order there was in use in the county a general index system which was not ledgerized. Acting under the order, the clerk began the general indexing and adopted a ledgerized system known as the "Coons' Index System." The clerk also subsequent to the order indexed all deeds, wills, etc., according to the "Coons' Index System" and continued this current indexing until the county failed to provide him with the "Coons' Index System" and the necessary index

books for the work of current general indexing, when he returned to the old general index system, subject to some improvements.

*Held:* That the clerk was, under the circumstances, justified in returning to the old system of general indexing, and that in doing such indexing in accordance therewith he complied with his duty as prescribed by statute; and that it would not be his duty to general index the accumulated records in some general index system which might thereafter be provided and installed in the clerk's office.

7. CLERKS OF COURT—*Records—General Index System.*—Action of the circuit court adopting a general index system was, under the statute formerly existing on the subject, and is now under the statute at present existing on the subject, a condition precedent to the ascertainment of what general index system, if any, other than that previously in use, it is the duty of a county clerk to use at any given time in current general indexing the records of his office.

8. CLERKS OF COURT—*Fee for Recording Deed to County.*—A county clerk is entitled to the fee allowed by section 3505, Code of 1904, for recording a deed to the county, notwithstanding a general allowance to the clerk for road services.

Original application for mandamus.

*Mandamus denied in Cause No. 1.*

*Mandamus awarded in part as prayed for in Cause No. 2.*

## STATEMENT OF THE CASE AND FACTS.

The plaintiffs in these causes invoke the exercise by this court of its original jurisdiction to award writs of mandamus.

Omitting reference to certain matters which have been eliminated from controversy since these causes were instituted, the following statement will sufficiently set forth the relief now being sought herein.

The first above entitled cause (hereinafter referred to as cause No. 1) seeks such writ to compel the defendant

99

therein, the clerk of Culpeper county (hereinafter referred to as clerk), to general index certain records in his office in accordance with a certain ledgerized system of general indexing, which will be hereinafter more particularly described, during a period in which the necessary index books for such work were not and have not yet been provided by the county.

The second above entitled cause (hereinafter referred to as Cause No. 2) seeks such writ to compel the defendant therein, the board of supervisors of Culpeper county (hereinafter referred to as the board), to issue warrants to said clerk for the unpaid balance of the annual allowances for the year 1917 made to him by said board, consisting of his salary as clerk of $600.00, for road services $50.00, as clerk of said board $60.00 and for stationery $150.00, being a total of $860.00, less $215.00 heretofore paid on account thereof, being a net unpaid balance of $645.00, on $215.00 of which interest is claimed from July 1, 1917, and on another $215.00 interest is claimed from October 1, 1917, and the residue is claimed as due and payable on December 31, 1917, should said clerk continue in his position as clerk until the latter date.

Mandamus is also sought in Cause No. 2 to compel said board to issue warrant to said clerk for $815.00, with interest thereon from August 29, 1914, for general indexing certain current records in his office in accordance with said ledgerized system during a period in which such system had not been expressly adopted by any order of the circuit court for said county, but prior to and during which it had been and was put in use and used by said clerk acting under an order of court presently to be referred to and for which work the necessary index books were provided by the county.

Mandamus is also sought in Cause No. 2 to compel said board to issue warrant to said clerk for $1.25 clerk's fee

provided by statute for recordation of deeds claimed by him for recording a certain deed from J. W. Jasper and wife to said county, conveying to it a right of way for a public road.

## THE FACTS.

The said clerk was duly elected and qualified as county clerk and as such clerk of the Circuit Court for Culpeper county (Va. Const., sec. 110) on July 1, 1893, and has continued, by successive elections and qualifications, as such clerk up to the present time. His current term of office will not expire until December 31, 1919, his last election having occurred in November, 1911, his current term of office of eight years having commenced thereunder on January 1, 1912.

The said county clerk was and is *ex officio* clerk of the said board. (Sec. 849, Code of Va.)

Acting under statutory authority, the said board has been accustomed on or about the first Monday in January of each year, since said clerk has been the incumbent of said offices as aforesaid, to fix the salary and stationery allowances of said clerk for the current year, and to make the same payable in four equal quarterly instalments, to-wit, one-fourth on or about March 31st, the same amount on or about June 30th, the same amount on or about September 30th, and the residue on or about December 31st of the year—the same course being taken as to the salaries of the other county officers. Such custom of fixing of the annual allowances and payment of same quarterly as aforesaid was followed by said board during said incumbency of said clerk each year until the year 1917. For the years 1915 and 1916 said board in January fixed the annual allowances of said clerk as aforesaid, at the same time it fixed the allowances of the other county officers, at the following amounts, namely:

Clerk ............................$600.00
Road services ........................ 50.00
Clerk board of supervisors .............. 60.00
Stationery .......................... 150.00

or total for each such years of ............$860.00,
and these allowances were paid quarterly as aforesaid,
$215 each quarter, by warrants issued therefor as afore-
said.

In January, 1917, when the annual allowances of the
other county officers were fixed by said board and ordered
paid as usual, it did not fix any allowances for said clerk,
but in reference thereto entered the following in the min-
utes of the proceedings of the board: "W. E. Coons salary
laid over."

On March 19, 1917, the said board entered the following
order:

"In re salary of W. E. Coons, clerk, for year 1917.

"On motion, W. E. Coons, clerk, is allowed $215.00, said
amount to be deducted from his salary when same is fixed."

On August 31, 1917, said board entered an order fixing
the allowance of said clerk for the year 1917 at the same
amount of same items as in 1915 and 1916 and the same
total of $860.00, but added a *proviso,* in effect, that these
allowances should not be paid until the said clerk should
do the general indexing aforesaid, to compel the doing of
which mandamus is sought in said cause No. 1, as above
set forth.

The material facts in regard to said general indexing of
old records, and also in regard to the current general in-
dexing covered by the $835.00 claim of said clerk above
referred to, are as follows:

In March, 1894, the year after the commencement of the
first term of office of said clerk, the Circuit Court of Cul-
peper county entered an order under section 3184 of the

Code of Virginia, as amended by Acts of Assembly 1891-2, p. 772, by which the said clerk was selected as being in the discretion of such court a suitable person and was appointed to make a general index to certain of the deed books, will books, and judgment lien docket books of the clerk's office of said county in accordance with such statutes. (No copy of this order is in the record of the causes before us. The above indicates the contents of such order of court as definitely as same is disclosed by the pleadings, admissions of the briefs and statements of facts before us. It must be further assumed, however, that such order provided for extra compensation to said clerk for general indexing only the said books *then existing* in said clerk's office, containing deeds, wills theretofore recorded, and judgments theretofore docketed, since the statute last above referred to authorized such compensation for indexing such books only, as will be more particularly pointed out in the opinion below.)

Prior to such order there was in use in said county a general index system which was not ledgerized, all the names indexed which began with the letter A being found under the letter A, similarly as to letter B, etc., and such general index from long use had become defaced.

Acting under said order of court, said clerk began in May, 1894, general indexing, and he adopted as the system therefor a ledgerized system known as the "Coon's Index System" for which said clerk subsequently obtained a United States patent, which has ever since and now belongs to, and the system of indexing court records thereunder has been ever since and is now controlled by, said clerk in his personal and individual capacity.

Under this system, books printed in advance of some clerical preparation of their contents cannot be utilized. They are not stock books and cannot be bought as such. Before a book can be printed, the data printed therein, in-

cluding names, etc., must be compiled and the greater part of the indexing work done. It, therefore, manifestly requires more work of a clerk to general-index under such system than under the said old general index system, or under the ordinary ledgerized systems in use in some other clerk's offices. The record in the causes Nos. 1 and 2 before us does not disclose all of the general indexing which was done by said clerk of books in said clerk's office existing at the time said order of court was entered. It is sufficient to say as to this, however, that said clerk was paid in full for all of such work done by him.

But, in addition to the work of general indexing books in said clerk's office existing at the time of said court order, said clerk, after May, 1894, indexed all deeds and wills recorded and judgments docketed in said clerk's office after March, 1894 (which work will be hereinafter referred to as current general indexing), and continued this current general indexing up to December 23, 1913, in the general index in accordance with said "Coon's Index System." During this time the necessary index books for such current general indexing were paid for by said county and furnished for such work. Bills for such books were from time to time rendered by the printing concerns, who furnished same as directed by said clerk, against the latter as clerk, and on being presented to the said board were ordered paid and were paid accordingly.

During such period (from March, 1894, to December 23, 1913) certain accounts were rendered from time to time by said clerk and presented to the said circuit court for work done in the general indexing aforesaid, some of which accounts included charges for current general indexing of deeds and wills recorded and judgments docketed after March, 1894. These accounts so far as rendered up to and including an account rendered November 19, 1906, were all allowed by said court, ordered paid and were allowed

by said board and were paid by the county accordingly.
Following November 19, 1906, the said clerk proceeded with
the current general indexing aforesaid expecting to be
paid therefor in like manner as he was paid for general
indexing of said books existing in said office at and prior
to said court order of March, 1894, and as he was in fact
paid for some of the work of current general indexing as
aforesaid. The necessary index books were furnished and
paid for by the county up to December 23, 1913, as afore-
said. The work of current general indexing such books
from November 19, 1906, to December 23, 1913, for which
he has not been paid, aggregates the said sum of $835.00.

On or about February, 1913, the said board was advised
by the attorney for the Commonwealth of said county
that it had no legal right or authority to make an allow-
ance to the said clerk of anything for current general in-
dexing said records; that it was the duty of the clerk, under
the statute law on the subject, to do such current indexing
without extra compensation; and subsequently (precisely
when a decided and final position on the question was taken
by the board does not appear from the record before us,
but certainly on or before December 23, 1913) the board
so informed said clerk and notified him that it would not
in future make him any allowance for such current general
indexing in addition to his salary as clerk. The board did
not decline to continue to pay for the printing and furnish-
ing of the necessary index books for such current indexing
work. But thereupon said clerk ceased to prepare data
for the current general indexing in and refused to sell to
the county the necessary index books therefor of 'said
"Coons' Index System" after December 23, 1913, at a price
on which he and the said board could agree.

Thereupon, said clerk returned to the old system of gen-
eral indexing in use in said county prior to March, 1894
(with some added improved features not material to the

controversies before us), and has since December 23, 1913, kept up the current general indexing of his office by the use of such old system (with the added improvements alluded to above) and has continued to refuse to sell to the county the "Coons' Index System" therefor at any price to which the said board and he could agree.

Accordingly, since December 23, 1913, the said county has been without any index books for any ledgerized system of current general indexing and without any such system being in use.

Further, in regard especially to the said $835.00 claim of said clerk, the following facts should be noted:

On · February 23, 1913, the attorney for the Commonwealth and the said clerk orally submitted to the then judge of the Circuit Court for Culpeper county for his opinion the question whether the said clerk was entitled, in addition to his salary as clerk, to the compensation covered by his account for said $835.00 for the current general indexing aforesaid. Such judge then gave it as his opinion that the clerk was not entitled to such extra compensation. Subsequently this matter was pressed by and for said clerk with such judge on a number of occasions, and he always and invariably told the said clerk and other parties that he could not enter an order in said circuit court for the payment for such work, and such judge wrote a letter to the wife of said clerk on May 5, 1914, to such effect.

There appears, however, on record on the order book of said circuit court, of date August 29, 1914, the following order (so far as material):

"An account of W. E. Coons, clerk, for indexing amounting to $835.00 was examined, allowed and ordered to be certified to the board of supervisors for payment. For indexing deed book No. 27, grantee side, $20 * * *" etc. (giving items of indexing covered by the account, ag-

gregating $835.00, all of which were for current general indexing aforesaid up to December 23, 1913). On the margin of the order book recording this order was written by such judge and signed by him, after the adjournment of the August term of such court, 1914, the following entry "Entered by mistake."

In regard to the $1.25 clerk's fee for recording the deed from Jasper and wife to the county of Culpeper, conveying a right of way for a public road, above mentioned:

The statute provides such fee to the clerk for recordation of all deeds. The record does not disclose that the allowance to the clerk for road services was intended to cover such a service as recording such a deed as this.

### SUMMARY OF FACTS.

1. With respect to the discretion as to the amounts of the allowances to the clerk vested by statute in said board: That discretion has been exercised by the board. These amounts were made definite and certain by the order of such board of August 31, 1917. What the board has done, however, is to place a condition upon the payment of such allowances, namely, in effect, the requirement that if the said clerk shall sell his "Coons' Index System" to the county at a price which he and the said board can agree upon, he shall do the general indexing of the records aforesaid which have accumulated in his office since December 23, 1913, in the "Coons' Index System," otherwise that he shall do such general indexing in some other ledgerized general index system *hereafter* to be chosen and installed by the said board in said clerk's office, without compensation for such work other than his salary as county clerk.

2. If the statute law on the subject did not authorize payment of extra compensation to the clerk for said cur-

100

rent general indexing, in addition to his salary, there was no contract express or implied, in fact or in law, between said clerk and said board or county, on the subject of such extra compensation.

3. The contract between the said clerk and said board or county with respect to the furnishing by the former of his said index system to the county was not an express but an implied contract and it expired certainly on or before December 23, 1913; the county on and after that date being free to discontinue the use of the "Coons' Index System" and the owner of the latter being on and after such date free to decline to sell its use to the county.

4. That the order of court of March, 1894, above referred to, did not expressly adopt the "Coons' Index System," but by the wide authority given thereby to said clerk in the premises and the subsequent action of such court in allowing claims of such clerk for general indexing of records in said clerk's office existing at the time of the first named order (March, 1894) in the "Coons' Index System," it must be now inferred and taken to be a fact that said court in effect adopted said "Coons' Index System" as the system for general indexing the records of said county existing in March, 1894; but the court did not by any order prescribe how long that system should be continued, nor make any contract with the owner of such system by which the county was bound to continue to use such system or to purchase the index books therefor or by which such owner would be obligated to continue to furnish such books, for any definite time, certainly not beyond December 23, 1913; nor did the said board do so.

5. Since December 23, 1913, there has been no ledgerized general index system in use in the clerk's office of said county.

6. That the only general index system in use in such county since December 23, 1913, was the old general index system in use therein prior to March, 1894. That this old system, so far as the record before us discloses, gives the Christian names or initials of the Christian names, as well as the surnames of the grantors, grantees, testators and judgment lien creditors and debtors of the deeds, wills and judgments recorded and docketed, and hence complied with the statute (Acts 1891-2, p. 772) on the subject, in lieu of a different system being prescribed by the court under Acts 1912, p. 575. That the order of court of March, 1894, did not prescribe the "Coons' Index System" or any other particular system, leaving the system to the discretion of said clerk.

7. That the record does not disclose that the allowance to the clerk for road services aforesaid was intended to cover such a service as the recordation of such a deed as that from Jasper and wife.

*Edwin H. Gibson,* for board of supervisors of Culpeper county.

*Hiden & Bickers* and *Gilmer & Stant,* for W. E. Coons.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

In our view of these causes the following decisive questions arise therein, which we will consider and pass upon in their order as stated below.

1. Has the board of supervisors of a county any discretion to refuse to act in fixing the compensation and other allowances of a county clerk allowed by law *at something,* within the limits prescribed by statute; or if it acts,

to impose a condition or conditions upon the payment of such compensation, on the ground that the clerk has not performed, or is not performing, his duties as such?

This question must be answered in the negative. *Blair* v. *Marye, Auditor,* 80 Va. 485. The principle applied in the case just cited is the same as that which is involved in the undertaking by a board of supervisors to withhold any action fixing the amount of, or (what is the same thing in effect) the undertaking by such board to place a condition or conditions upon the payment of the salary or compensation allowed by law to an officer whose office or position is not created by the board of supervisors but by law. Such an office or position is not the creature of the board of supervisors but of the law. By the law, therefore, and not by the board of supervisors, except as they may act in accordance with the law, must the salary or compensation of such office or position be fixed. For any failure of such an officer to discharge his duties which are prescribed by law, the remedy of mandamus will lie. To allow boards of supervisors to withhold any action aforesaid, or to place a condition or conditions upon the payment of the salary or compensation aforesaid, would be to allow such boards to nullify the election of the officer to the extent of the emoluments of the office allowed by law thus denied him.

The discretion in the premises vested by law in the board of supervisors is not to refuse to act, or if they act, not to act arbitrarily, but according to law. They have a discretion, given by statute as aforesaid, as to the amount of the allowances. But that discretion was exercised by the order of August 31, 1917.

A board of supervisors undoubtedly has a discretion also as to fixing the time or times of payment of salaries and allowances of county officers, if exercised for good and suf-

ficient cause—such as the condition of the county treasury in the lack of funds to pay same at a certain time or times in the year, because of some situation against which the board did not and could not reasonably have been expected to provide in the next preceding laying of the county levy, or the like cause, operating impersonally. For the reasons stated above, however, the board of supervisors of a county has no discretion to fix a different time of payment of the annual salary and other allowances provided for by law of a county clerk from the times of payment of salaries and allowances of other county officers allowed by law, on the ground that the clerk is not discharging or has not discharged his duty as such.

2. Is the said clerk entitled, in the instant causes, to interest on the unpaid amount of the allowances made him by order of said board of August 31, 1917, to-wit, on the instalments thereof of $215.00 from July 1, 1917, and on $215.00 from October 1, 1917, until paid?

On this question the cases of *Lynchburg* v. *Amherst Co.*, 115 Va. 600, 80 S. E. 117, and *Blair* v. *Marye, Auditor*, 80 Va. 485, are cited by counsel for the clerk, and in that connection it is stated by counsel: "We simply mention what at least appears to be a conflict in the two cases mentioned for whatever it may be worth to the court." On this subject we deem it sufficient to say that we do not consider that there is any conflict between the two cases referred to, and that it is settled by the case of *Lynchburg* v. *Amherst Co.*, *supra*, that the obligations of the counties of the State of the character in question bear no interest.

3. What is the true construction of the statute law of the State on the subject of the allowance to a clerk of extra compensation, in addition to his salary as clerk, for current general indexing, *i. e.*, the general indexing of the deed, will and judgment lien docket books according to a general

index system adopted prior to or in use in the county at the time of such current general indexing—so far as brought in question in the instant causes?

This question can best be answered by having before us the statute law on the subject. The statute under which the questions involved in the instant causes all arose was enacted February 29, 1892, is contained in Acts of Assembly 1891-2, p. 772, and, so far as material, is as follows:

Section 3184. "The court of every county * * * wherein a general index to the deed books, will books * * * judgment lien docket books * * * in the clerk's office of such county * * * has not been provided or wherein such general index has been provided and has become so defaced as to render another general index necessary or proper, or wherein the index does not show the Christian names or the initials of the grantor, grantee, or testator, may, in its discretion, appoint a suitable person, whose duty it shall be to make a general index to such deed books in the full names of the grantor and grantee, and a general index to the will books * * * judgment lien docket books * * *; and the said court shall certify a proper allowance to the person so appointed as compensation for services performed under such order, and direct warrant therefor payable out of the treasury of such county * * * and the board of supervisors of the county * * * shall make sufficient levy for same. It shall be the duty of the clerk of every court * * * to index all recorded deeds, wills, * * * docketed judgments * * * as well *as* in the general index as in the deed books, will books * * * judgment lien docket books * * *" ("as" italicized above is evidently redundant, due to an error in draft of act or in printing. This word is absent in section 3184 of Code of 1887 which this act amends.)

This statute did not in terms go beyond providing for a general index containing the Christian names or initials of the persons indexed, in lieu of no general index, or of one defaced so as to render another necessary and proper, or of one which did not show the Christian names or initials of the persons indexed. This was the extent of the improvement in general indexing then contemplated by statute or for which compensation was expressly authorized thereby to be paid. But however that may be, the payment authorized by the statute is to some person, not necessarily the clerk, specially appointed by the court to make the general index mentioned in the statute. That general index did not include books of deeds, wills and judgments recorded and docketed subsequently to the order of court making such appointment. That is made clear by the closing provision of the statute that, "It shall be the duty of *the clerk* of every county  *  *  *  to index all recorded deeds, wills  *  *  *  docketed judgments  *  *  *  in the general index  *  *  *'' where one has been provided. (Italics supplied.) Therefore, if we consider the "Coons' Index System'' as the system of general indexing adopted and in use in said county from 1894 to December 23, 1913, it was the duty of said clerk to do the current general indexing from March, 1894, in the "Coons' Index System'' up to December 23, 1913, without being entitled to any extra compensation therefor other than his salary as county clerk.

It was not until the act approved March 14, 1912, was passed (Acts, 1912, p. 575), that statutory provision was made for further improvement in general indexing, consisting in the advance from a general index giving Christian names or initials of the names indexed, to a legerized system of general indexing, which latter system results in many subdivisions of names which fall together under

their alphabetical division under the old system contemplated and provided for by said act of February 29, 1892.

The act approved March 14, 1912, so far as material, is as follows:

"Chapter 283. An act to provide for the indexing of deeds and other records in ledgerized general index books. 1 * * * That the judges of the circuit * * * courts of this Commonwealth, either in term time or in vacation, be, and they are hereby empowered in their discretion to employ a suitable and efficient person or persons for the purpose and have the deed books, judgment lien docket books * * * wills, * * * indexed in ledgerized general index books in such ledgerized general index system as the said courts may deem expedient, and in their opinion affording as good public service as that contained in and afforded by the said ledgerized general index Key System. And for said work the said courts shall have the power to allow a reasonable compensation to be paid out of the county * * * treasury of the county * * * for which said work is done.

"2. Said indexing may be in addition to or in lieu of the indexes now required to be kept under section thirty-one hundred and eighty-four of the Code of nineteen hundred and four, as said courts may in their discretion determine.

"3. The board of supervisors of the county * * * wherein said ledgerized indexing shall be directed by the court to be done, shall provide in laying its annual county * * * levy a sufficient sum to pay for said indexing, together with the costs of the necessary index books and stationery that may be required therefor."

There was no action taken or purporting to have been taken by the Circuit Court for Culpeper county under the last named statute.

The last named act was repealed by a still later act, approved March 16, 1916 (Acts, 1916, p. 394), which made provision for a yet further advance in the system of general indexing of records. The last named statute is, so far as material, as follows:

"I. That whenever the attention of the judge of any circuit court of any county * * * is called to the need of an improved system of general indexing to any of the records kept by the clerk of such court, it should be the duty of such judge in his discretion, to appoint a committee to inquire into the necessity for such indexing and make a report to said court, which report may be made and filed either in term or in vacation.

"2. If such committee shall report that the work is needed, it shall be the duty of said judge, in his discretion, in term or in vacation, to authorize and direct said committee to make a written contract with some responsible and experienced person or persons for the installing of said work.

"The committee so appointed, subject to the approval of the court, shall contract for a modern family name, or ledgerized, alphabetical, key-table index, which shall show such information, in addition to name, as said committee may agree upon.

"3. Where such index is installed, the same plan of index to current records shall be adopted and used by the clerk of such courts, and they shall enter daily thereon all instruments admitted to record. The clerks keeping such current index shall not be required to keep a 'daily index of receipt of deeds for recordation' or an individual index to each book, as provided in section twenty-five hundred and five of Pollard's Code.

"4. The board of supervisors of the county *herein* (wherein) said indexing shall be directed by the court to

be done, shall, if necessary, provide, in laying its annual county * * * levy, a sufficient sum to pay for said indexing and materials.

"5. Chapter two hundred and eighty-three of the acts of the General Assembly of nineteen hundred and twelve is hereby repealed."

No action of said clerk or of said court or board involved in the instant cause was, or could have been taken under the last named act, which was not enacted until March 14, 1916, as aforesaid, and did not go into effect until ninety days later, but its provisions are quoted to show the progressive advance in the statute law on the subject of general indexing to meet modern growing demands arising from the general appreciation of the value of the improvements which have been devised in such indexing.

It is apparent, therefore, that, in truth, the said clerk, in his action under the order of court of March, 1894, was a pioneer in the improvement of general indexing of records and was in advance of the statute law in Virginia on the subject. The work the said clerk thus did in general indexing the records existing in his office in March, 1894, and the current records thereafter accumulated was in advance and in excess of what the statute on the subject then contemplated, to the extent that he *ledgerized* such general indexing, in addition to having it show the Christian names or initials of the names indexed. However, only the current indexing covered by said account for $835 is involved in the causes before us. For current general indexing the statute then in force (of February 29, 1892) certainly, as above noted, allowed no extra compensation to be paid to the clerk.

Therefore, the said court, in refusing to allow said account of the clerk for said $835 covering current general indexing as aforesaid, if it did so refuse, acted in accord-

ance with the statute under which said work was done, in that such statute did not authorize such extra compensation. The fact that said court by other orders entered at prior times allowed and said board approved the payment of similar claims by the clerk is immaterial, for reasons which are obvious.

If, however, the said court did not refuse but attempted to allow said $835 claim, and if the order appearing on the order book of said court of date August 29, 1914, should be considered as an order of such court, the claim is as yet unpaid, the order is still executory, and it was without authority of law; and the said board (whose powers as to allowances of claims are wholly statutory) had no authority thereunder to "direct warrant therefor" or to otherwise authorize such payment out of the county treasury. *Price, Auditor* v. *Smith,* 93 Va. 14, 24 S. E. 474; *Richmond City* v. *Epps, Sergeant,* 98 Va. 233, 35 S. E. 723. Hence the said board was but acting in accordance with law in refusing to allow such payment.

It becomes unnecessary, therefore, to consider the questions raised in these causes as to how such orders came to be entered, or the effect of the entry aforesaid on the margin of the order book that the order was "entered by mistake," etc.

4. Is it the duty of said clerk to general index the current recorded deed, will and judgment lien docket books in his office aforesaid, which accumulated during the period from December 23, 1913, onward, in some general index system which may hereafter be provided and installed in such office, other than the general index system in which said clerk has recorded such current records during such period?

From what has been said above touching the facts and

the statute law on the subject, it is apparent that such duty does not exist.

As above noted the "Coons' Index System" was not in force or in use in said county later than December 23, 1913. The said clerk complied with the requirements of said statute (Act of February 29, 1892) by doing the current general indexing in such system so long as it was in force in such county, to-wit to December 23, 1913. In doing so, as above noted, he did nothing more than his statutory duty, and hence he was entitled to no extra compensation therefor. At the same time, he did nothing less than his duty as clerk up to that time. Therefore, by reason of the failure of the county, whether through the said circuit court or said board or otherwise, to provide the "Coons' Index System" to the said clerk as such, or the necessary index books for the work of current general indexing therein, thereafter the existence of such index system in said clerk's office ceased to continue, and said county was without such system for the general indexing of any records in its clerk's office accumulating after December 23, 1913.

It is needless for us to inquire by whose fault this deplorable condition was induced. In these causes, being proceedings for mandamus, we are powerless to enforce any remedy in the premises; if indeed any remedy exists. We are confined to a consideration of the facts as they exist and to the inquiry as to whether any rights of the parties arise under the law as applicable thereto which are enforceable by mandamus.

The "Coons' Index System" not being in use or available for use in said county after December 23, 1913, it was not the duty of said clerk to do the current general indexing therein. In that dilemma the said clerk returned to the old general index system in use in his office prior to

March, 1894, subject to some improvements thereon above alluded to. He thereafter, until these causes were instituted, did the current general indexing by such system. Such system met the requiremnts of the statute law on the subject prior to the act of March 14, 1912. Action of the circuit court adopting a general index system was, under the statute formerly existing on the subject, and is now under the statute at present existing on the subject, a condition precedent to the ascertainment of what general index system, if any, other than that previously in use, it is the duty of a county clerk to use at any given time in current general indexing the records of his office. As above noted, the said circuit court did not adopt the "Coons' Index System" for any definite period of time, nor did the said county, through said court or said board or otherwise, make any contract for the use of such system, or for the necessary index books therefor, beyond December 23, 1913. No other system of general indexing was adopted by said court thereafter, either under the act of February 29, 1892, · or of March 14, 1912, in lieu of the old system aforesaid in force prior to any order of court on the subject. We think, therefore, that said clerk was, under the circumstances, justified in returning to such old system of general indexing of the current records after December 23, 1913, and that in doing such indexing in accordance therewith he has complied with his duty in that behalf as prescribed by statute.

The question 4 under consideration must therefore be answered in the negative.

5. Is a board of supervisors authorized by law to allow to the county clerk for recording a deed to the county the fee allowed by section 3505 of the Code of Virginia to be charged by clerks for recording deeds, in addition to the allowance of $50 made to such clerk for road services?

No question is raised before us in these causes as to the authority of said board to make the allowance which it has made as aforesaid to said clerk for road services, in addition to the $600 annual allowance as salary as clerk of the county (Sec. 834, Code of Va. as amended), and $60 for salary as clerk of said board (Sec. 852, Code of Va., as amended), and $150 for stationery (Sec. 846, Code of Va.), hence authority therefor by statute law must be presumed by us to exist so far as these causes are concerned. If such authority exists, the presumption is that such allowance was made to cover services for which no specific compensation is provided by statute. The record before us does not disclose that said compensation for road services was made to cover such fees as said recordation fee, and, therefore, we must conclude that it was improperly disallowed by said board.

For the foregoing reasons, we are of opinion to award the writ of mandamus prayed for by said clerk in cause No. 2, to compel the board of supervisors of Culpeper county to forthwith issue a warrant in favor of said clerk for said $1.25 recordation fee and also for $430 in his favor for the allowances made him by order of said board as above stated for services, etc., to October 1, 1917, and that on or about December 31, 1917, such board shall issue to said clerk a warrant for $215, the remainder of such allowances, should such clerk continue to fill his said office to the latter date; such warrants to be payable by the treasurer of the county out of the county funds available for that purpose, without interest. We are of opinion to deny all further relief by writ of mandamus prayed for by said clerk in cause No. 2, and to deny the writ of mandamus prayed for by said board of supervisors in cause No. 1. The order of this court will be entered accordingly,

with costs in favor of said clerk as the party substantially prevailing.

*Mandamus denied in Cause No. 1.*

*Mandamus awarded in part as prayed for in Cause No. 2.*