SAVOY CONSTRUCTION CO., INC.

v.

The UNITED STATES.

No. 579–81C.

United States Claims Court.

April 29, 1983.

Herman M. Braude, Washington, D.C., for plaintiff. Joseph C. Kovars and Braude, Margulies, Sacks & Rephan, Chartered, Washington, D.C., of counsel.

Mark D. Friedman, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MEROW, Judge:

This matter comes before the court on motions for summary judgment filed by the parties. Plaintiff seeks review and reversal of the portion of the decisions of the Armed Services Board of Contract Appeals (ASBCA) in *Savoy Construction Co., Inc.,* ASBCA No. 21218, 80–1 BCA par. 14,392, *recon. denied,* 80–2 BCA par. 14,724, denying plaintiff's claim for extended corporate overhead. Defendant seeks a determination that the cited ASBCA decisions are final under the review standards of 41 U.S.C. 321–322 (1976).

### Background Facts

On August 2, 1973 the United States Army Corps of Engineers (Corps) contracted with plaintiff for the construction of the Harry Diamond Laboratories, Phase III, in Adelphi, Maryland, at a price of $17,094,500. The contract included a changes clause reading (in part):

3. CHANGES (1968 FEB)

\*    \*    \*    \*    \*    \*

(d) If any change under this clause causes an increase or decrease in the contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, an equitable adjustment shall be made and the contract modified in writing accordingly.

The contract work was to be completed on or before November 15, 1975, 820 days after a notice to proceed with the work was issued by the Corps. The date of beneficial occupancy by the government was December 10, 1976, some 391 days after the originally scheduled completion date. Numerous contract changes were made by the Corps during construction. In 14 modifications the overall completion date was extended by 273 days. Before the ASBCA the parties stipulated, among other items, that "2. During performance of the contract the Respondent recognized 273 compensable days of time extensions for government caused delay of the work attributable to the modifications presently in dispute."

Among the claims which plaintiff asserted before the ASBCA in connection with the extended performance period was one for "Extended Corporate Overhead." Plaintiff's complaint stated (in part):

As the delays resulting from the Government-ordered changes caused Appellant to incur additional costs associated with extended project supervision, Appellant also had to bear additional general corporate and administrative costs during the delays ("extended corporate overhead"). These costs are not included in the overhead costs of administering a particular change or in the general overhead cost of administering the contract. Extended corporate overhead reflects the costs of administering and supervising the contract as a whole during a period of time when Appellant assumed its overhead costs, *e.g.,* the cost of its corporate staff, would be absorbed by additional direct cost dollars, *e.g.,* other contracts. The

delays extended the period of time during which Appellant had to focus its resources on the performance of this project. As a result, Appellant was precluded from directing its resources to the performance of work relating to other contracts and from reducing excess staff whose efforts would not otherwise have been required by Appellant.

In presenting this extended corporate overhead claim to the ASBCA, plaintiff utilized a formula approach based upon the decision in *Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA par. 2688, 61–1 BCA par. 2894. First, a ratio was developed between the billings plaintiff made on the Harry Diamond contract and total billings on all contracts during the same period. This ratio was then applied to the total corporate (home office) overhead for the period[1] to obtain the portion thereof deemed allocable to the Harry Diamond contract. This allocable portion was then divided by the total days of contract performance to obtain a "Daily Extended corporate rate." This daily rate times the stipulated 273 days of extended performance comprised the amount claimed.

In denying plaintiff's claim for extended corporate overhead, the board found no evidence that the contract modifications caused any increase in the ratio of plaintiff's home office overhead to its direct costs. The board also found that during the time period involved plaintiff was performing a substantial amount of work under other contracts with no indication in the evidence that the modification caused any increase in the home office overhead rate applicable to this other work. The ASBCA noted that formulas similar to that proposed by plaintiff had been utilized in other appeals "where some entitlement for it has been determined." But the ASBCA ruled that plaintiff had failed to establish the necessary predicate, "that the modification caused appellant's other work to be burdened with an increased rate for its home office expenses." Thus, the ASBCA concluded that plaintiff "has not established entitlement to any recovery for unabsorbed overhead, * * *." On plaintiff's subsequent motion for reconsideration, the ASBCA noted that each modification included home office overhead through the use of rates expressed as a percentage of the additional direct costs added by the modifications and that, on the evidence of record, "[t]o award a daily amount in addition to overhead rates already allowed by respondent would constitute an over recovery."

In its motion for summary judgment, plaintiff asserts that the ASBCA's decision constitutes "an aberration from the long-established case law of this court * * *."[2] In response, defendant asserts that the ASBCA's decision is supported by substantial evidence and is legally sound.

### Discussion

The home office overhead involved in this litigation constitutes costs which are fixed in nature in that they do not generally change directly in relation to the volume or number of contracts performed or the ex-

---

1. Corporate (home office) overhead for plaintiff comprised categories of expense such as: administrative salaries; auto and travel; data processing; depreciation; directors' fees; dues and subscriptions; entertainment and promotion; insurance; interest; legal and accounting; licenses, fees, miscellaneous taxes; office supplies and expense; officers' life insurance; officers' salaries; provision for profit sharing; research and development; rent; telephone; Xerox.

2. Plaintiff also contends that the presence of the word "compensable" in the stipulation of the parties before the ASBCA ("the Respondent recognized 273 compensable days of time extensions * * *") represented a concession by the government of plaintiff's entitlement to a per diem home office overhead rate. The record demonstrates a clear presentation of the government's opposition to any per diem entitlement. The government argued that plaintiff had been fully compensated for its home office overhead when it received an audited percentage rate of the direct costs of the modifications. Moreover, as plaintiff did not raise this stipulation argument before the ASBCA as a part of its reconsideration motion, it may not be considered on judicial review. *Conrac Corp. v. United States*, 214 Ct.Cl. 561, 558 F.2d 994 (1977).

tent of the direct costs incurred in performing such contracts. They are the costs which a company must continue to incur to remain in business, such as officers' salaries, rent, taxes, etc. Obviously, to remain in business, a company must, on an overall basis, price its contracts so as to recover the direct costs incurred in performing its contracts plus an additional amount sufficient to cover the fixed costs it will continue to incur, even in the absence of contracts, plus a profit.

When a change is made to a government contract during its performance, the price must be equitably adjusted. The equitable adjustment required is simply a corrective measure utilized to keep a contractor whole when the government modifies a contract. *Bruce Construction Corp. v. United States,* 163 Ct.Cl. 97, 100, 324 F.2d 516, 518 (1963). The equitable adjustment must compensate the contractor for increased costs which are the direct and necessary result of the change. *Paul Hardeman, Inc. v. United States,* 186 Ct.Cl. 743, 752, 406 F.2d 1357, 1362–63 (1969) (Davis, J., concurring); *Merritt-Chapman & Scott Corp. v. United States,* 192 Ct.Cl. 848, 851, 429 F.2d 431, 432 (1970).

Because home office overhead is not a direct cost, in order for an equitable adjustment to reflect a recovery of an appropriate portion of this fixed cost, an equitable method of allocating such overhead expense must be employed. In the instant case, in bidding for the Harry Diamond laboratories contract, plaintiff assumed that a "mark up" of between 4 and 8 percent on direct costs would cover home office overhead and profit. In the equitable adjustments obtained for the modifications made to the contract, plaintiff obtained home office overhead sums premised upon rates of 3.7 to 10 percent of direct cost, including the

cost incurred on those changes which did not involve an extended performance period. These rates were based upon plaintiff's audited overhead experience.[3]

In the present action, plaintiff asserts that the home office overhead sums received as a part of the contract modifications encompassed only the costs of administering the changed work itself and that it is entitled to a further recovery of home office overhead allocable to performance of the unchanged work over a longer period of time—so-called extended overhead.

Plaintiff is correct in its assertion that the Court of Claims sanctioned per diem extended home office overhead recoveries in appropriate circumstances. In *Fred R. Comb Co. v. United States,* 103 Ct.Cl. 174 (1945), the government suspended construction work at the beginning of the contract and, in awarding the contractor compensation for home office expenses, the court reasoned that this expense could not have been saved during the suspension period but the contractor "is obliged, in effect, to waste it, and to spend a similar amount at the end of the contract for the extra time made necessary by the delay." 103 Ct.Cl. at 184. *See also Ben C. Gerwick, Inc. v. United States,* 152 Ct.Cl. 69, 134, 285 F.2d 432 (1961); *Laburnum Const. Co. v. United States,* 163 Ct.Cl. 339, 352, 325 F.2d 451, 459 (1963); *J.D. Hedin Constr. Co. v. United States,* 171 Ct.Cl. 70, 108, 347 F.2d 235, 259 (1965); *Luria Bros. & Co. v. United States,* 177 Ct.Cl. 676, 369 F.2d 701 (1966); *Bennett v. United States,* 178 Ct.Cl. 61, 371 F.2d 859 (1967); *H. John Homan Co. v. United States,* 189 Ct.Cl. 500, 418 F.2d 522 (1969).

However, the concept of awarding additional home office overhead on a per diem basis simply because the performance time on a project has been extended presents logical difficulties. As noted, this overhead

---

**3.** Plaintiff sought a determination by the ASBCA that the home office overhead rate allowed in the modifications should have been 42.1 percent of direct cost. Plaintiff asserted that the change order work consumed a disproportionate amount of home office overhead. The 42.1 percent rate represented an attempt to break out the portion of its home office over-

head which should be allocated to the contract modifications and was supported by evidence of a brief survey taken of the relative time spent working on the contract modifications by officers and clerical staff. This attempted refinement of the overhead allocation system was not accepted by the ASBCA and this denial is not contested in the present action.

cost is not related to contract performance. The cost will continue regardless of when any one contract is completed. Having a contract in progress for an additional period of time does not necessarily increase or decrease home office costs. Only if an extended performance period on one contract served to preclude the receipt of new revenue would the contractor actually suffer a loss of sums otherwise available to offset its continuing home office overhead expense. In recent decisions, courts and boards have cast a critical eye on the concept of an automatic recovery of home office overhead whenever a contract completion is delayed. For example, in *W.G. Cornell Co. v. Ceramic Coating Co.,* 626 F.2d 990, 994 (D.C.Cir. 1980), the court ruled that "In order to recover, the plaintiff must show, at the minimum, that the delay somehow affected plaintiff's operations so that it was not practical to undertake the performance of other work even had it been available." *See also General Insurance Co. of Amer. v. Hercules Constr. Co.,* 385 F.2d 13, 23 (8th Cir.1967); *Guy James Const. Co. v. Trinity Industries,* 644 F.2d 525, 533 (5th Cir.1981); *Berley Industries, Inc. v. City of New York,* 45 N.Y.2d 683, 385 N.E.2d 281, 284, 412 N.Y.S.2d 589, 592 (1978); *Fred Lofreddo,* ASBCA Nos. 22218, 222819, 82–1 BCA par. 15,509 at p. 76,930; *Seckinger & Co.,* ASBCA No. 26233, 82–1 BCA par. 15,793 at p. 78,230; *Capital Electric Co.,* GSBCA Nos. 5316–7 (slip op., Feb. 17, 1983); *cf. Vitex Mfg. v. Caribtex Corp.,* 377 F.2d 795 (3rd Cir.1967); *Teradyne, Inc. v. Teledyne Industries, Inc.,* 676 F.2d 865 (1st Cir.1982) (damages for lost sales under UCC 2–708(2)); *but see Excavation-Construction, Inc.,* 83–1 BCA par. 16,293.

■ Notwithstanding the controversy concerning what must be established to recover home office overhead, the governing principle is that an equitable adjustment must keep the contractor whole. "An equi-table adjustment is required if any change causes an increase or decrease in * * * the contractor's cost of * * * performance of any part of the work *under this contract* * * *." (Emphasis added.) Increased costs or lost economic opportunities under other contracts do not trigger the requirement for an equitable adjustment under the changes clause of the contract. *General Dynamics Corp. v. United States,* 218 Ct.Cl. 40, 585 F.2d 457 (1978); *Coley Properties Corp. v. United States,* 219 Ct.Cl. 227, 593 F.2d 380 (1979); *cf. William Green Const. Co. v. United States,* 201 Ct.Cl. 616, 626–27, 477 F.2d 930, 936–37 (1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974); *Northern Helex Co. v. United States,* 207 Ct.Cl. 862, 524 F.2d 707 (1976).[4]

■ In the instant case, plaintiff has received equitable adjustments for the contract modifications in issue, including those which did not result in extending the performance period. These adjustments included compensation for an allocable portion of plaintiff's home office overhead on the basis of audited overhead rates applied to its direct cost as a base. The evidence before the ASBCA supports its determination that plaintiff failed to establish that this allocation method produced an inequitable result. Plaintiff simply failed to carry its burden of persuading the ASBCA, by a preponderance of the evidence, that the existence of an additional performance period required an additional increase in the contract price to offset a greater proportion of plaintiff's continuing home office costs. *Teledyne McCormick-Selph v. United States,* 218 Ct.Cl. 513, 588 F.2d 808 (1978).

### Conclusion

In the above circumstances, it is concluded that the ASBCA's decisions in this matter are final under the standards set forth in 41 U.S.C. 321, 322, so that judgment shall

4. In this regard, the ASBCA's comment that a necessary predicate for recovery of per diem overhead under the changes clause would be a showing that "the modifications caused appellant's other work to be burdened with an increased rate for its home office expenses" is not construed to support any recovery of such increased costs on other contracts. Rather, the point is that no showing was made that the instant contract did not recompense plaintiff for its equitable allocable share of plaintiff's continuing home office expenses.

be entered in favor of defendant and against plaintiff, with plaintiff's petition to be dismissed.