**CAPITAL ELECTRIC COMPANY,**
Appellant,

v.

**The UNITED STATES, Appellee.**

**No. 83–965.**

United States Court of Appeals,
Federal Circuit.

Feb. 7, 1984.

---

Thomas J. Wingfield, Atlanta, Ga., argued, for appellant. With him on brief was Herbert H. Gray, III, Atlanta, Ga.

Mark D. Friedman, Washington, D.C., argued, for appellee. With him on brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C.; Timothy Sullivan, Deputy Dist. Counsel, Baltimore Dist. Corps. of Engineers, Dept. of the Army, of counsel.

James A. Pemberton, Jr., and Christopher M. McNulty, Washington, D.C., were on brief, for amicus curiae, Associated General Contractors of America.

Ira J. Smotherman, Jr. and Clifford F. Altekruse, Atlanta, Ga., were on brief, for amicus curiae, American Subcontractors Ass'n.

Before FRIEDMAN and MILLER, Circuit Judges, and RE, Judge.*

JACK R. MILLER, Circuit Judge.

This appeal essentially involves the question of whether, as a matter of law, Capital Electric Company ("Capital") was entitled, under the suspension of work clause of its contract with the Government, to recover damages for extended overhead and to calculate those damages according to the so-called Eichleay formula (*Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA ¶ 2688 (1960), *aff'd on recon.*, 61–1 BCA ¶ 2894).[1] It was stipulated that there were 303 days of compensable delay due to the fault of the Government. The General Services Board of Contract Appeals ("board") held that Capital was not so entitled. We affirm in part, reverse in part, and remand.

The dispute arises from a contract awarded Capital on October 12, 1976, to furnish and install mechanical, electrical, and plumbing work for the construction of the Federal Building and U.S. Courthouse in Fort Lauderdale, Florida. Capital performed the electrical portion of the contract and subcontracted the remainder of the work to the Poole and Kent Company, which, in turn, further subcontracted work to United Sheet Metal Co., Firepak, Inc., Johns-Manville Sales Corp., and Honeywell, Inc.

Capital's contract was one of a series of prime contracts for the Fort Lauderdale project awarded under the phased design and construction technique. Phased construction contemplates the overlapping of design and construction tasks as well as sequential or concurrent scheduling of segments of the work. The Government awarded, *inter alia*, separate prime contracts for structural concrete and interior finishes.

As a result of the structural concrete contractor's slow and erratic progress, the work of Capital and its subcontractors was unreasonably delayed and disrupted. Capital's work was also delayed and disrupted due to the Government's failure to act upon submittals for the electrical panels, main switchboard, and emergency generator while the Government contemplated a contract change that was never issued.

### The Board

Notwithstanding the Government's admission that the Eichleay formula has been the prevailing method adopted by the contract appeals boards, the board, which had approved use of the Eichleay formula in *Dawson Construction Co.*, GSBCA No. 4956, 79–2 BCA ¶ 13,989, at 68,635 (1979), for the structural concrete phase of the same Fort Lauderdale project at issue

---

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

1. We use the word "essentially" because Capital alternatively claims damages according to a "modified" Eichleay formula; also, its subcontractors' damages have been computed according to a "modified" Eichleay formula. These will be discussed *infra*.

here,[2] expressly overruled its determination in *Dawson*. It recognized that the Corps of Engineers Board of Contract Appeals "continues to permit recovery of extended home office overhead," citing *Excavation Construction, Inc.*, ENG BCA No. 3858, 82–1 BCA ¶ 15,770, at 78,068 (1982). However, it observed that recently the Armed Services Board of Contract Appeals had indicated that it will not permit recovery of extended home office overhead for periods of performance delay, suspension, or extensions of the contract work, citing *Savoy Construction Co.*, 80–1 BCA ¶ 14,392, at 70,970 (subsequently affirmed by the Claims Court, 2 Cl.Ct. 338 (1983), decided simultaneously with this case on appeal to this court).

The board said that it would not accept the concept of compensable extended overhead, as opposed to underabsorbed overhead,[3] and that the Eichleay formula is not a proper method of calculating underabsorbed overhead. It opined that the premise of Eichleay is that if the performance period were extended, overhead costs must have increased *ipso facto*, and noted that the auditor reported that use of the Eichleay formula could result in a computation of contract damages even in the absence of evidence that a contractor's work forces were idled, or placed in a position where they could not be redeployed or other work substituted. Thus, the Government argues that an automatic application of the Eichleay formula allows a contractor to escape the burden of proof faced by all claimants, namely: establishing the fact of injury.

## DISCUSSION

Although these points have some degree of validity, we are not persuaded that they correctly reflect the concept of the Eichleay formula, at least as far as Capital is concerned. In this case, *compensable* delay was stipulated before the board. Moreover, Capital introduced unrebutted evidence that it could not have taken on any large construction jobs during the various delay periods due to the uncertainty of the delays and (except after the original con-

2. The board said:

We cannot agree with the Government's contention that our decision in *Dawson* was just an example of acceptance as a matter of administrative convenience of the concept of recovery of extended home office overhead during periods of delay. We said in *Dawson* that the concept of recovery of extended home office overhead during periods of delay had its origin in *Fred R. Comb Co. v. United States*, 103 Ct.Cl. 174, 183 (1945), and that the Eichleay formula was simply an appropriate method for calculating extended home office overhead. *Dawson*, 79–2 BCA at 68,635. *Comb* was not a departure from existing law on recovery of breach damages due to performance delay. It was preceded by *Brand Investment Co. v. United States*, 102 Ct.Cl. 40, 44, 58 F.Supp. 749, 751 (1944) and *Coath & Goss, Inc. v. United States*, 101 Ct.Cl. 702, 710 (1944). There are other, older cases but further citation would not be helpful. In distinguishing *Coath & Goss* which involved a performance extension and granting recovery of extended home office overhead for a period of performance suspension, *Comb* may be read as authority for the proposition that recovery of extended home office overhead may be permitted where it is, in effect, wasted as a result of a performance suspension. To that extent, we do agree with the Government that

*Dawson* might be distinguished as involving a performance suspension rather than a performance extension, as is the case here.

But we do not think that such a distinction is meaningful ....

The principle of recovery announced in *Comb* was, in fact, expanded in *Eichleay*, and there applied to a period of performance extension rather than performance suspension. *Eichleay*, 60–2 BCA at 13,567. There are many other cases....

3. It explained that these are separate and distinct concepts; that underabsorbed overhead is particularly involved in manufacturing cost accounting; that extended overhead is a concept unique to construction contracting; that it has, as its premise, that extending the performance period will increase overhead costs and is calculated by "a daily rate method." On the other hand, it explained that underabsorbed overhead occurs when direct costs are diminished as a result of delay; that the contract's share of overhead is diminished, while the overhead share of all other contract work is increased; and that underabsorbed overhead is calculated by determining an allocation rate differential. Thus, it calculated allowable home office overhead by multiplying the direct costs attributable to the delay period by 9.2 percent, which the auditor estimated was the normal rate of allocation of home office overhead of the contractor.

tract period, when a major portion of the project had been completed and accepted) due to the limitation on its bonding capacity.[4] Thus, Capital has not actually used an *ipso facto* approach. Indeed, as stated in Eichleay, 61–1 BCA ¶ 2894 at 15,117: "The mere showing of these facts [5] is sufficient to transfer to the Government the burden of going forward with proof that Appellant suffered no loss or should have suffered no loss." Amicus American Subcontractors Association states: "When the evidence adequately proves the existence of damages owing to a delay in work on the project, the extent of those damages need not be quantified to a mathematical certainty," citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed.2d 544 (1931).

Although the board recognized that calculation of contract damages is difficult and admitted that the method it used is an approximation, it faults the Eichleay formula for not being precise. Amicus Associated General Contractors of America points to a basic flaw in the method of calculation applied by the board (note 3, *supra*) in a case where no work is being performed during a suspension, for example, and application of a percentage overhead charge (e.g. 9.2) to the direct costs of work performed (zero) would produce zero for overhead that nonetheless continues on.[6] Capital lists examples of such overhead: weekly payrolls, Davis-Bacon re-

ports, checks, W–2's, 941's and other required tax forms, cost records, review submittals from subcontractors, weekly and monthly progress reports to the Government, and "the myriad similar tasks which are as critical as the on-site work but which can more easily be performed at a central location." Amicus American Subcontractors Association adds: salaries, dues and subscriptions, auto and travel, telephone, and photocopying.

Capital argues that the *Comb* decision remains binding precedent with regard to Government contracts, citing *Luria Brothers & Co. v. United States*, 177 Ct.Cl. 676, 369 F.2d 701, 709–10 (1966) and *J.H. Hedin Construction Co. v. United States*, 347 F.2d 235, 259 (Ct.Cl.1965). It asserts that the board had "no authority to disregard the binding precedents established by the Court of Claims." However, in fairness it should be said that if the board believed these precedents were wrongly decided, it was not improper for the board to act accordingly. At the same time, it must be recognized that, as held by the Court of Appeals for the Federal Circuit, sitting *en banc*, *South Corporation v. United States*, 690 F.2d 1368 (1982), these Court of Claims precedents are binding precedent and can only be overruled by the Federal Circuit sitting *en banc*.[7]

As far as this panel is concerned, we do not believe these precedents should be

---

**4.** In *Excavation Construction, Inc., supra,* the Engineer Board of Contract Appeals found that there was extensive evidence to establish the disruptive effect of the delay on the contractor's operations and quoted from *Brand Investment Co. v. United States,* 102 Ct.Cl. 40, 58 F.Supp. 749 (1944), that "[i]n order to recover, the plaintiff must show, at the minimum, that the delay somehow affected plaintiff's operations so that it was not practical to undertake the performance of other work even had it been available." The Engineer Board added that "[i]t is not necessary that [the contractors] show futile attempts to obtain other work which somehow could have been substituted for this major project ...."

**5.** "The suspensions occurred at various times and in connection with various features of the contract work.... One item of work would be

suspended, then another and so on through an extended series of suspensions. The partial suspensions were lifted at innumerable, varying intervals over a prolonged period of time with the issuance of the numerous modifications providing for changes in the contracts. Under these circumstances it would not have been prudent or practical for appellant either to risk the layoff of Home Office personnel or facilities, or, on the other hand, to absorb personnel and facilities so made idle by taking on new commitments."

**6.** Although this is obviously a "worst case" example, it demonstrates that the Government's method of calculating damages can lead to absurd results.

**7.** The Government's motion for initial hearing of this case *en banc* was denied by the court.

overruled. They are of such long standing and have been followed in so many decisions of the various boards of contract appeals that such action should more properly be taken by the Congress. Nor are we persuaded that this would be an appropriate case for breaking precedent.

## CONCLUSION

Capital has proposed that its damages be calculated according to a modified Eichleay formula or, alternatively, according to the Eichleay formula as follows:

#### Modified Eichleay Formula

$$\frac{\text{Original Contract Price}}{\text{total billings for original contract period + contract billings for extended period}} \times \frac{\text{fixed overhead for original contract period}}{} = \frac{\text{fixed overhead allocable to contract}}{}$$

$$\frac{\text{Fixed overhead allocable to contract}}{\text{original days of performance}} = \text{daily contract overhead}$$

$$\text{Daily contract overhead} \times \text{days delay} = \text{amount recoverable}$$

#### Eichleay Formula

$$\frac{\text{Contract billings}}{\text{total billings for contract period}} \times \frac{\text{total overhead for contract period}}{} = \frac{\text{overhead allocable to the contract}}{}$$

$$\frac{\text{Allocable overhead}}{\text{days of performance}} = \text{daily contract overhead}$$

$$\text{Daily contract overhead} \times \text{days delay} = \text{amount recoverable}$$

Under the modified Eichleay formula, daily contract overhead would be $446.52; whereas under the Eichleay formula, daily contract overhead would be $311. We are satisfied that the record does not support use of the modified Eichleay formula instead of the Eichleay formula and that Capital's damages should, therefore, be calculated according to the latter.

Poole and Kent have used an "Eichleay-type formula," as have its subcontractors. The slight difference between damages calculated according to the Eichleay formula ($150.99 daily contract rate) and the "close variation" (board's words) of the Eichleay formula ($155.81 daily contract rate) used by Poole and Kent appears to be appropriate to its circumstances, as do the variations used by Poole and Kent's subcontractors, Firepak, United Sheet Metal, and Johns-Manville. Honeywell's claim for extended office overhead does not appear to be justified ($2,850 said to have been "eyeballed").

In view of the foregoing, we affirm the board as to Honeywell and in all other respects reverse the board and remand for further proceedings consistent with this opinion.

### AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

FRIEDMAN, Circuit Judge, concurring:

Although I agree with the court that the appellant is entitled to recover, the analysis through which I reach that conclusion differs somewhat from that of the court.

For almost 40 years the Court of Claims consistently has held that the delay damages a government contractor may recover include extended home office overhead incurred during the period of delay. The leading case is *Fred R. Comb Co. v. United States*, 103 Ct.Cl. 174 (1945), which the court subsequently followed and approved a number of times. *E.g., Luria Brothers & Co. v. United States*, 177 Ct.Cl. 676, 369 F.2d 701, 709–10 (1966); *J.D. Hedin Construction Co. v. United States*, 347 F.2d 235, 259 (Ct.Cl.1965). Similarly, the various boards of contract appeals repeatedly allowed the recovery of this element of delay damages.

The government now asks us to jettison this settled line of authority on the ground that all of those cases were wrongly decided. It argues that since the delay in performance ordinarily does not increase the total amount of office overhead the contractor incurs in connection with the particular contract, but merely spreads it over a longer period, allowing the contractor to recover for such overhead for the period of delay would result in compensating the contractor for losses it did not actually incur. According to the government, the only situations in which a contractor may recover for such extended office overhead is where the delay in performance: (1) requires the contractor to hire additional personnel or incur other additional expenses; or (2) prevents the contractor from taking

on other work it would have been able to assume had there not been the delay.

Although superficially plausible, the government's argument does not withstand more penetrating analysis based upon the theory on which extended office overhead is allowed as an element of delay damages. By definition this type of overhead cannot be directly attributed to the performance of a particular contract, yet it is an essential part of the contractor's total cost of doing business. Some basis, therefore, must be found for allocating this total overhead among the various contracts in connection with which it is incurred.

A contractor's estimate of its costs necessarily includes its overhead costs, which it calculates on the basis of the time required to perform the contract. Where performance of a contract has been delayed, the overhead expenses of performing that contract continue for the additional time. A portion of the total overhead for that additional period accordingly is allocable as a cost of performing that contract.

As the Court of Claims explained in *Combs,*

> It would not be expected that a contractor would enlarge his main office staff and facilities at a time when one of his jobs was merely marking time. But unless his office was understaffed before the suspension, it too would, *pro tanto,* mark time during the suspension, unless the useful work which it would have been doing in regard to this job, if the job had not been suspended, had been replaced by extra work made necessary by the suspension. So the fact that no extra help was hired seems both natural and immaterial. If some employees had been laid off, that would have been material, since it would have enabled the contractor to pay the full staff which he would need ·during the extra time that the work was in process, because of the delay, with the money he had saved by laying off employees during the period of suspension.

But it is, ordinarily, not practicable to lay off main office employees during a short and indefinite period of delay such as occurred here. So the contractor, instead of saving the salary of that proportion of his main office staff which is attributable to this contract, is obliged, in effect, to waste it, and to spend a similar amount at the end of the contract for the extra time made necessary by the delay. This waste is caused by the breach of contract, and it ought to be paid for by the party guilty of the breach.

103 Ct.Cl. at 183–84.

In other words, a portion of the overhead incurred during the entire period of performance must be charged against the revenue received during that period as a cost of performing the contract. The Court of Claims decisions, as well as the Eichleay formula used to calculate the amount of such extended office overhead, are based upon and reflect these economic realities of the construction business. I think those decisions are correct, and I see no reason for the panel (which is bound by those decisions) to invite the full court to reconsider them en banc.