The GEORGE HYMAN CONSTRUC-
TION COMPANY, Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
et al., Defendants.

Civ. A. No. 85–0550.

United States District Court,
District of Columbia.

Oct. 11, 1985.

Order Nov. 6, 1985.

William W. Goodrich, Jr., Richard J. Webber, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiff.

Sara E. Lister, Gen. Counsel, Robert L. Polk, Associate Gen. Counsel, Thomas B. Dorrier, Asst. Gen. Counsel, Washington, D.C., for defendants WMATA and Carmen Turner.

## MEMORANDUM

OBERDORFER, District Judge.

The matter is before the Court on plaintiff's request for damages and related re-

lief against defendant Washington Metropolitan Area Transit Authority ("WMATA"). By this action plaintiff challenges WMATA's General Manager's "Final Decision" resolving a contract dispute between the parties. Currently pending are plaintiff's motion for partial summary judgment and defendants' cross motion for summary judgment. This memorandum addresses those motions.

## I.

The plaintiff, George Hyman Construction Company ("Hyman"), in 1974 contracted with WMATA for the "finish work" [1] on the Metro's Pentagon Station. After commencing work under the contract, Hyman was, for various reasons, on a number of occasions denied access to some parts of the site. Although Hyman was never completely foreclosed from the site as a result of the partial and intermittent interruptions, the project required 941 days to complete rather than the 480 days originally estimated by Hyman. *See generally id.* at 89,337–41.

Construction began in 1974. Between 1975 and 1978, Hyman submitted claims to WMATA based on additional costs allegedly incurred because of WMATA's failure to provide timely access to the site. The parties negotiated unsuccessfully from 1978 to 1980 with respect to these claims. *See* Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue at ¶¶ 4–6. Hyman then resorted to the "Disputes" clause in the contract.[2] In 1981, WMATA's Contracting Officer denied the relief sought by Hyman and assessed liquidated damages. The dispute was then submitted to the United States Army Corps of Engineers Board of Contract Appeals ("Board"),[3] which decided the dispute in plaintiff's favor after an extensive trial-type proceeding conducted January 25—February 12, 1982. The Board's lengthy decision was rendered January 10, 1985, and addressed Hyman's claim and the claims of its subcontractors.

In its decision, the Board reached two conclusions that constitute the central issues in this action. First, the Board applied the so-called *Eichleay*[4] formula to

---

**1.** The finish work included, *inter alia,* architectural features and finishes, mechanical and electrical systems, paving and painting. This work was to be done after another contractor had completed the station structure. *See The George Hyman Construction Company,* 85–1 B.C.A. (CCH) ¶ 17,847, Fdg. 2 at 89,336 (January 10, 1985) [Armed Services Board of Contract Appeals Decisions] (hereinafter "Board Decision").

**2.** The disputes clause provided as follows:
DISPUTES
(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Board of Directors. The decision of the Authority Board of Directors or its duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudu-

lent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. In connection with any appeal proceeding under this article, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.
(b) This Disputes article does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decisions of the Board of Directors of [sic] its representative on a question of law.

**3.** WMATA has designated the Board to hear contractors' appeals from contracting officers' decisions. WMATA's General Manager, acting under delegated authority, reviews Board Opinions and renders final decisions such as the one here challenged. *See* Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue at ¶¶ 8–9.

**4.** *See Eichleay Corp.,* 60–2 BCA ¶ 2688 (1960), *aff'd on reconsideration,* 61–1 BCA ¶ 2894.

calculate Hyman's claim for extended home office overhead. *See* Board Decision at 89,353–54. Second, the Board decided that Hyman was entitled to recover interest on equity capital used to finance the increased costs occasioned by the delay. *See* Board Decision at 89,355.

After the Board issued its decision, the General Counsel of WMATA prepared a staff memorandum for WMATA's General Manager, who is empowered to make the final decision under the disputes clause of the contract. This memorandum recommended that the General Manager ratify most of the Board's decision, but concluded that "the recommendation for allowance of 'Eichleay' overhead and interest are erroneous as a matter of law." Notice of Administrative Record Submittal, "Counsel's Memos" at 2. On May 1, 1985, the General Manager issued a five-page decision which denied Hyman's *Eichleay* and cost-of-capital claims. The General Manager noted that she had considered the Board's opinion, the General Counsel's memorandum, and a reply letter from Hyman's attorney. Notice of Administrative Record Submittal, Final Decision at 1.

Under the terms of the disputes clause,[5] the General Manager's Final Decision is "final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." The matter is now before the Court on plaintiff's motion for partial summary judgment and defendants' dispositive summary judgment motion. Plaintiff's statement of material undisputed facts is not contradicted by defendants.

The question before the Court is a legal one: whether the General Manager erred as a matter of law by refusing to apply the *Eichleay* formula and by disallowing the cost of equity capital. The plaintiff's pending motion for summary judgment is partial in that the plaintiff asks only for a ruling on these disputed issues of law. The question of damages is to be addressed in further proceedings. The defendants' cross-motion, which would simply uphold the General Manager's decision, is dispositive.

## II.

### A.

Plaintiff contends that the Board properly relied on the *"Eichleay* method" in reaching its decision on Hyman's claims for certain costs attributable to overhead. The *Eichleay* method requires that the total overhead pool of the contractor be multiplied by a percentage derived by dividing the billings on a particular contract by the contractor's total billings for the contract period. The resulting "allocable" overhead is divided by the total days of performance to determine the daily overhead rate. The daily overhead rate is then multiplied by the number of days in the delay period to determine the overhead allocable to that period. The *Eichleay* method has been endorsed as a rule of thumb for attributing overhead costs to a delay period—it serves as an approximation that substitutes for a line-by-line determination of how much of the home office overhead was actually devoted to the delayed project during the period of delay. *See, e.g. Capital Electric Co. v. United States,* 729 F.2d 743 (Fed.Cir. 1984).

WMATA's General Manager concluded, however, that

> [t]he main problem with the [Board's] decision is that it simply assumes that Hyman and its subcontractors are entitled to an "Eichleay" type recovery without any showing of damage. The [Board] failed to analyze the period of delay to determine whether Hyman or its subcontractors were precluded from obtaining other work to absorb their overhead.... Further, and more importantly, the [Board] failed to analyze the extended period to determine if the fact that this work was pushed to a later period by WMATA caused delay and

---

**5.** *See supra* note 2.

somehow precluded these contractors from obtaining what would have been their regular work during this period, resulting in a net loss of total work to absorb the overhead.

Final Decision at 2. The General Manager went on to hold that "[f]or the reason that there is no showing of impact or damage, I am rejecting the Eichleay type award for Hyman and the other subcontractors...." *Id.* at 3.

### B.

Our Court of Appeals has held that a contractor seeking to recover overhead costs in a breach of contract action[6] "must show, at the minimum, that the delay somehow affected [its] operations so that it was not practical to undertake the performance of other work even had it been available." *W.G. Cornell Co. of Washington, D.C. v. Ceramic Coating Co. Inc.*, 626 F.2d 990, 994 (D.C.Cir.1980). If this view is applied to an equitable adjustment case like this one, plaintiff may recover damages attributable to home office overhead costs and calculated by the *Eichleay* method only if the General Manager wrongly concluded that the Board failed to make a determination that Hyman had actually been damaged by the delay. Under the disputes clause, the General Manager's decision on this issue is "final and conclusive" unless, *inter alia*, it is determined to be "not supported by substantial evidence." Conversely, if substantial evidence in the record indicates that the Board *did* make findings on this point, the General Manager was wrong when she concluded that the Board's decision was unsupportable because it "simply assumes that Hyman and its subcontractors are entitled to 'Eichleay' type recovery without any showing of damages."

Hyman contends that the Board scrutinized the effect of the delays on Hyman and the individual subcontractors and awarded costs only where there was a causal relationship between delay and damages. The Board's decision does, in fact, draw a distinction between those subcontractors that were able to show a harm attributable to WMATA's delay and those that were not. In the case of Potomac Iron Works (one of Hyman's subcontractors), for example, the Board noted:

> We find no sufficient causal relationship between delayed performance of the Hyman construction contract on site and the increase of Potomac's overhead rates in later years to support an equitable adjustment on that basis.

The Board therefore disallowed Potomac's claim for increased overhead. Board Decision at 89,361.

The Board's treatment of subcontractor Fischbach & Moore ("F&M") similarly demonstrated the Board's intention to link its award to damages actually occasioned by delay. The Board stated in reference to F & M:

> To think that its home office devoted any energies to this project during the lengthy period it had left the job and was performing no work whatsoever, would be illogical. Back-up from the home office would be needed and could be expected while work was being performed and, to some degree, in a ratio proportionate to the amount of work being performed.
>
> The subcontractor's entitlement to extended home office (overhead) expenses is not necessarily coterminous with that of the prime contractor. In this instance we think they are not. Considering the time and level of actual work on the project by F&M as compared to those anticipated at time of proposal (bid) and award, we conclude that F & M is entitled to extended home office overhead for an additional 270 days at the agreed daily rule of $79.04 or $21,340.80.

Board Decision at 89,357. In yet another example, C & H Contracting (another Hyman subcontractor) was held to be entitled

---

**6.** The present suit is an action for "equitable adjustment" under the contract's dispute clause.

No breach of contract is alleged.

to overhead costs for a period of 440 days because "it agreed to accept no, or virtually no, new work while the work for Metro was proceeding." Board Decision at 89,-360. The record thus supports Hyman's contention that the Board *did*, before awarding damages attributable to overhead costs, inquire into whether the contractor had been actually harmed by the delay and considered the extent to which the contractors were precluded from obtaining other work. Consequently, the General Manager's conclusion that the Board "simply assume[d]" the application of the *Eichleay* formula to the period of delay appears to be incorrect.

The Board's decision further clarifies that the Board considered and rejected WMATA's arguments that Hyman had not adequately demonstrated that Hyman was precluded from obtaining other work to absorb its overhead during the period of delay. The Board noted at 89,343 that "[WMATA] disputes allowance of extended overhead on a number of bases. It contends that Hyman did not incur any additional overhead expense because its auditor was unable to determine that there was any 'unabsorbed overhead.'" (citation omitted). Indeed, WMATA repeatedly argues that Hyman was extremely busy during the period of delay,[7] thereby suggesting that home office overhead would have been absorbed by other projects. The

Board's decision, however, demonstrated that it considered this factor in rendering an *Eichleay* type award in favor of Hyman: "availability of or engagement in other work—other contracts performed by the contractor will increase the denominator of the allocation fraction and reduce the portion of the overhead to be charged to a particular job." Board Decision at 89,354.[8] Again, the record belies the General Manager's conclusion that the Board "simply assume[d]" application of the *Eichleay* formula without careful consideration of the actual damage visited upon Hyman by the delays.[9]

In addition, there is authority for the proposition that the threshold question of whether the delay actually occasioned damage may not be relevant as a matter of law. Judge John Lewis Smith has pointed out that *W.G. Cornell, supra,* is not applicable to a case like this one because

> price adjustments under the suspension of work clause of a contract are not "limited to what would be recoverable in damages for breach of contract."

*Excavation Construction, Inc. v. WMATA,* No. 83–1125, slip op. at 10 (D.D.C. June 21, 1984) (*quoting* Board of Contract Appeals Reconsid. at 3). Moreover, the Federal Circuit, in a case in which a contractor sought to recover extended overhead under the suspension of work clause of a con-

**7.** *See e.g.,* Defendant's Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment and Defendants' Cross-Motion for Summary Judgment at 2.

**8.** It is additionally noted that ample evidence in the record, reflected in the Board's lengthy decision, supports Hyman's contention that the intermittent delays were unpredictable and of uncertain duration. *See* Board Decision, Findings 3, 6, 8, 10–17 at 89,336–41. The nature of the delays, adequately detailed in the record, bolsters Hyman's argument and the Board's implicit conclusion that Hyman could not have easily acquired replacement employment during the periods of delay and should not be denied extended home office overhead costs because of WMATA's allegation that Hyman has failed to show that Hyman could not have obtained other work to absorb that overhead.

**9.** While judicial review herein focuses upon the record before the General Manager (and upon

which she made her decision), it is noted that even a cursory review reveals substantial evidence in the much larger record before the Board that supports its determination that there were extended home office overhead costs attributable to the delays and properly recovered by Hyman and its subcontractors under the *Eichleay* method. *See e.g.* Administrative Record: Transcript Volume 4 at 6–20 (testimony of James Joseph Brogan, Project Manager), 120–25 (testimony of Edward Stefanik, Senior Project Manager); Transcript Volume 6 at 121–28 (testimony of Dennis J. Kakol, consultant to F & M); Transcript Volume 7 at 71–72 (Kakol), 163–72 (testimony of Lewis L. Pierce, President of Pierce Associates, Inc.); Transcript Volume 9 at 68–72 (testimony of Charles A. Merica, Vice President, Hyman Construction Company), 217–21 (testimony of Robert B. Heap, Jr., President of C & H Contracting).

tract, rejected the notion that *Eichleay* requires the contractor to bear the burden of proving the fact of injury before the formula may be applied. *Capital Electric Co., supra,* at 745–46. The latter case intimates that, upon the "mere showing" of such facts as plaintiff notes in this record, the *Eichleay* formula *presumes,* unless the defendants prove otherwise, that a contractor is injured by delay. The *Eichleay* formula then provides a method, justified by generally accepted principles of accounting, of estimating the damages so presumed. *Id.* at 745–47; 747–48 (Friedman, J. concurring).

■ These cases suggest that it may be unnecessary to decide whether the Board found that Hyman proved that it had been damaged by delay, and support summary judgment for Hyman on this issue. Even without this line of authority, however, Hyman must on this issue prevail. As discussed above [10] the record contains substantial evidence that the Board did not award damages attributable to overhead costs without first finding that damage was occasioned by delay.

As set forth above, the General Manager was not supported by the record in her primary objection and conclusion that the Board "simply assume[d]" application of the *Eichleay* formula without first making a careful examination of the damage occasioned by the delay. Given the Board's careful analysis (based on an extensive record, *see supra* note 9) and the recent endorsement of use of the *Eichleay* method in similar circumstances by the Federal Circuit,[11] it is concluded that the *Eichleay* method was appropriately applied by the Board in calculating the amounts properly reimbursed to Hyman and the subcontractors.

Accordingly, the accompanying order will grant plaintiff's motion for partial summary judgment on this issue. With the benefit of this decision, the parties should be able to determine the amount due for office overhead resulting from the delay between themselves. To facilitate this process, the accompanying order will schedule a conference between counsel followed, if necessary, by a status conference in court.

### III.

Hyman also claims that it is entitled to recover the cost of capital expended in financing the increased costs caused by WMATA's delays. The Board held that the distinction between the cost of borrowed capital and the cost of equity capital was not important, and that Hyman was entitled to interest on the equity capital Hyman had to use to finance the increased costs occasioned by the delays. According to the Board, this charge is readily discernible because of Hyman's practice of putting its surplus capital into certificates of deposit at American Security Bank. WMATA's General Manager in her final decision rejected the cost of capital theory on which the Board relied, and added that none of the signatories of the WMATA Compact have laws that permit the award of prejudgment interest on an unliquidated debt. Final Decision at 3–4. Hyman disputes both of these propositions, and argues that the contractual suspension of work clause encompasses recovery for cost of capital.[12]

---

**10.** *See supra* at note 9; *see also supra* at 901–902.

**11.** *See Capital Electric Co., supra,* 729 F.2d at 744–47, in which it is noted that "the *Eichleay* method has been the prevailing method adopted by the contract appeals board." *Id.* at 744.

**12.** The Suspension of Work clause provided:
SUSPENSION OF WORK
(a) The Contracting Officer may order the Contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as he may determine to be appropriate for the convenience of the Authority.
(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted by an act of the Contracting Officer in the administration of this contract, or by his failure to act within the time specified by this contract (or if no time is specified, within a reasonable time), an *adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by such unreasonable suspension, delay, or*

The Suspension of Work Clause provides for contractor reimbursement whenever a delay occasioned by the Contracting Officer in the administration of the contract results in "any increase in the cost of performance," although such adjustment will "exclud[e] profit." Hyman reasons that the loss of the use of the capital that it had to consume to finance the increased costs of performance itself constituted an increased cost of performance, because Hyman was prevented from putting the capital to more profitable uses.

Hyman attempts to distinguish adverse precedent in the area of federal procurement law on the ground that most of the precedent cases held that interest on claims against the United States could not be awarded unless expressly provided for in a contract or statute. The statutory provision on which this principle was based, 28 U.S.C. § 2516(a) (1976), has since been effectively overridden in the contract dispute context. *See* Contract Disputes Act of 1978, 41 U.S.C. § 611 (1978).[13] Hyman contends that 41 U.S.C. § 611 was based on a congressional realization that contractors must be compensated for their capital costs when progress payments are delayed. Plaintiff further contends that 41 U.S.C. § 611 also invalidates Court of Claims precedent which suggests that interest cannot be recovered absent an express contractual or statutory provision. Hyman finally notes that, in any event, WMATA was never subject to 28 U.S.C. § 2516 or any similar provision.

Plaintiff similarly attempts to distinguish adverse precedent found in Judge Smith's recent conclusion in a similar case that a contractor's claim for interest was really a claim for lost profit and that the contractor therefore could not recover for the cost of capital. *See Excavation Construction,*

*Inc. v. WMATA,* No. 83–1125, slip op. at 5 (April 19, 1985). Plaintiff argues that Judge Smith incorrectly relied on federal procurement precedent which was rendered irrelevant by 41 U.S.C. § 611. Hyman also argues that the case before Judge Smith was in a different posture, because in that case both the Board and WMATA's General Counsel had ruled against the contractor. *See id.* at 4–5.

Equally persuasive, however, is WMATA's contention that plaintiff's demand for reimbursement of cost of capital expended as a result of the delay is essentially a claim for prejudgment interest. As plaintiff itself stated in its pleadings, its cost of capital claim is as large as it is because

> [s]ince performance of the contract work during the years 1974–1977, WMATA has required Hyman to pursue an extremely lengthy administrative appeal process which has consumed seven years ... only to then reject the most important conclusions reached after a lengthy trial. Meanwhile, WMATA refuses to pay even undisputed amounts, while it argues that it is not liable for interest on any amount.

Memorandum of Points and Authorities In Support of Plaintiff's Renewed Motion for Partial Summary Judgment at 29.

 WMATA is an agency and instrumentality of Maryland, Virginia and the District of Columbia, and as such might enjoy certain incidents of sovereign immunity. *Cf. Morris v. WMATA,* 702 F.2d 1037, 1041 (D.C.Cir.1983); *Heffez v. WMATA,* 569 F.Supp. 1551, 1555–56 (D.D.C. 1983). One such incident of sovereign immunity is that prejudgment interest is not allowable against the state or its instrumentalities absent a statutory or contractual waiver of that immunity.[14] No Virginia

---

*interruption and the contract modified in writing accordingly....*
*See* Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Summary Judgment at 5 note 3 (emphasis added).

**13.** 41 U.S.C. § 611 provides in part that "[i]nterest on amounts found due contractors on claims shall be paid to the contractor from the date the

contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof."

**14.** *See United States v. North Carolina,* 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890); *General Railway Signal Co. v. WMATA,* No. 84–1717, slip op. at 5 (D.D.C. May 29, 1985).

statute [15] expressly subjects the Commonwealth to liability for prejudgment interest.[16] Moreover, precedent in this Court supports the conclusion that the capital cost reimbursement claim is in essence one for lost profit, the award of which is precluded by the Suspension of Work clause in this case. *Compare Excavation Construction, Inc.* (April 19, 1985), *supra, with General Railway Signal, supra.* In view of these principles and the ample authority cited by WMATA in support thereof,[17] it cannot fairly be said that the General Manager's decision to disallow plaintiff's claim for the loss of the use of its capital was arbitrary and capricious, without substantial evidence to support it or contrary to law. Accordingly, the accompanying order will grant defendants' motion for summary judgment on this issue.

## ORDER

For reasons more fully stated in the accompanying Memorandum, it is this 10th day of October, 1985, hereby

ORDERED, ADJUDGED, and DECREED: that plaintiff's motion for partial summary judgment is granted in part and denied in part; and it is further

ORDERED, ADJUDGED, and DECREED: that defendants' motion for summary judgment is granted in part and denied in part; and it is further

ORDERED: that the parties shall, on or before October 25, 1985, confer in a good faith effort to determine the amount of the overhead cost due to plaintiff as a result of this decision; and it is further

ORDERED: that a status conference will be held at 9:30 A.M. on October 30, 1985, in Courtroom No. 3, U.S. Courthouse, Washington, D.C.

## SUPPLEMENTAL ORDER

The issues in this case which were at controversy between the parties having been decided by Memorandum dated October 11, 1985, and it appearing that the

---

*General Railway Signal Co.,* in which Judge Gerhard A. Gesell found that waiver of immunity from prejudgment interest could be found by virtue of equitable adjustment language in a contract, is distinguishable from this case. The equitable adjustment clause in that case did not exclude profits, as does the suspension of work clause in this case. *See supra* note 12; *Compare General Railway Signal Co., supra, with Excavation Construction, Inc. v. WMATA,* No. 83–1125, slip op. at 5 *et seq.* (D.D.C. April 19, 1985).

**15.** Although the parties have not fully briefed the issue as to which jurisdiction's law governs this contract, they appear to assume that Virginia's law applies. As there is no indication as to where the contract was executed and it was substantially performed in Virginia, Virginia law will be applied in analyzing this issue. Application of state law is indicated by section 80 of the WMATA Compact, which provides that:

The Authority shall be liable for its contracts ... in accordance with the law of the applicable signatory.

D.C.Code § 1–2431 (1981).

**16.** In Virginia the award of prejudgment interest generally is within the discretion of the court or jury. Code of Virginia § 8.01–382 provides that:

... [I]n any action at law or suit in equity ... the judgment or decree of the Court, *may* provide for interest on any principal sum awarded, or any part thereof, and fix the period at which interest shall commence. [Emphasis added.]

The Virginia Supreme Court refers expressly to "broad discretion" given to the jury both as to the allowance of interest and fixing the date at which it shall commence. *Beale v. King,* 204 Va. 443, 132 S.E.2d 476, 480 (1963) (referencing § 8.01–382's precursor); *see also Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 550 n. 6 (D.C.App.1981); *Orient Overseas Line v. Globemaster Baltimore, Inc.,* 33 Md.App. 372, 365 A.2d 325, 343 (1976).

Defendant contends that § 8.01–382 would *not* permit an award of prejudgment interest against the Commonwealth or its instrumentalities as it fails to expressly include them within its provisions, *citing Yancey v. North Carolina State Highway & Public Works Commission,* 222 N.C. 106, 22 S.E.2d 256 (1942) and *Meadows v. Jamestown Foundation and Comptroller of the Commonwealth,* Circuit Court of the City of Richmond, Case No. 7307 (February 13, 1976). *See* Defendants' Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment and Defendants' Cross-Motion for Summary Judgment at 19.

**17.** *See, e.g., City of Lynchburg v. Amherst County,* 115 Va. 600, 80 S.E. 117 (1913); *Railway Express Agency v. Commonwealth,* 196 Va. 1059, 87 S.E.2d 183, 187 (1955). *See also supra* notes 14, 16.

parties have agreed that the amount due in accordance with the Court's Memorandum is $105,360.10, it is this 5th day of November, 1985, hereby,

ORDERED, that judgment is entered for plaintiff against defendant Washington Metropolitan Area Transit Authority in the amount of $105,360.10, plus interest to accrue from date of judgment.