**TELEDYNE McCORMICK–SELPH**

v.

**The UNITED STATES.**

**No. 448–76.**

United States Court of Claims.

Dec. 13, 1978.

William H. Butterfield, Washington, D. C., atty. of record, for plaintiff. Sellers, Conner & Cuneo, and Lewis Kent, Northridge, Cal., of counsel.

Alexander Younger, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge. .

This Wunderlich Act case presents us with the question as to what standard of

proof a plaintiff must meet in proving equitable adjustment claims. Teledyne McCormick-Selph (Teledyne or plaintiff) seeks review of a recommendation of our Trial Division upholding a decision of the Armed Services Board of Contract Appeals (ASBCA or Board). The Board had denied the greater part of plaintiff's claim for an equitable adjustment allegedly resulting from defective Navy specifications. Because we disagree with the Board and find, as a matter of law, it required plaintiff to meet too high a standard of proof, we hold Teledyne is entitled to an equitable adjustment in the amount of $219,169.

In June 1967, Teledyne was awarded a fixed price contract to produce 200,000 MK–8 cartridges for the Navy.[1] During the performance of the contract, Teledyne encountered several difficulties[2] which, plaintiff claims, entitle it to an equitable adjustment. In a 1973 decision, the ASBCA held that the Navy-supplied specifications were defective[3] and remanded for a "determination of the equitable adjustment due appellant [Teledyne]."

The parties were unable to agree upon an amount and in June 1974, the contracting officer (CO) issued a final decision allowing plaintiff $266,253. Teledyne timely appealed that decision to the Board which awarded plaintiff an additional $88,105[4], but denied the rest of plaintiff's claim. Plaintiff next sought review in this court, claiming an additional $219,169. The Trial Judge (in an opinion filed Jan. 11, 1978) agreed with defendant that the Board had not erred factually or legally, and denied Teledyne's claim for the additional $219,169.[5] Plaintiff now requests review under appropriate Wunderlich Act standards.

We hold, under these unusual circumstances, that the Board erred in its allocation of the burden of proof and that plaintiff is entitled to recover.

■ In general, an administrative determination of the amount of an equitable adjustment is a pure question of fact. *United States v. Callahan Walker Construction Company*, 317 U.S. 56, 61, 63 S.Ct. 113, 87 L.Ed. 49 (1942); *Phillips Construction Company, Inc. v. United States*, 394 F.2d 834, 841, 184 Ct.Cl. 249, 261 (1968). However, in the case before us, the essential facts are *not* disputed. As the Trial Judge noted, the amount of plaintiff's total costs including total labor costs in performing the contract have been agreed to by both parties. Teledyne's material costs and the General and Administrative (G&A) and overhead rates to be used in computing any equitable adjustment due plaintiff are not in dispute. The parties are also in general agreement as to actual labor hours worked

1. The MK–8 cartridge, which resembles an over-sized shotgun shell, was intended for use in opening the hooks on an airplane bomb rack so that bombs could be released from the plane.

2. One of the components of the MK–8 to be fabricated by plaintiff was a consumable disc. The applicable contract drawing specified its composition and set forth "advisory" mixing instructions. The material call-out on the consumable disc drawing was erroneous, as were the mixing instructions.

Another difficulty encountered by plaintiff was that of "hang fire" rejections. The contract specifications provided that the time from application of current at the MK–8 ignition element to hook opening was not to exceed 15 milliseconds (.015 seconds); to the extent that the hook opening time period exceeded the permissible time in an individual firing, a "hang fire" occurred. Blotting paper specified by defendant for use as an ignition element disc

actually had an inhibiting effect on effective ignition transfer.

3. ASBCA No. 15664, 73–2 BCA ¶ 10,243. The Board concluded that Teledyne was entitled to additional compensation for costs reasonably attributable to the defects described in note 2, *supra*.

Teledyne also claimed that defendant had improperly rejected two lots of cartridges. The Board, however, found an independent ground for rejection (mixed or contaminated propellant) and that claim is no longer in dispute.

4. This amount consists of compensation for an additional 6,188 hours of labor.

5. The Trial Judge also determined (in parts III and IV of his opinion) that plaintiff was not entitled to recover actual interest on loans to cover the amount of the equitable adjustment nor imputed interest on its use of capital. Teledyne does not seek review on these interest claims.

on the contract[6] and as to the estimated hours it "should have" taken to perform the contract.[7] The question of liability had been previously settled adversely to defendant by a prior decision of the Board.

In essence, what plaintiff seeks to recover as an equitable adjustment is the difference between the total costs it actually incurred and what it "should have" cost to produce the 200,000 MK–8 cartridges had there been no defective specifications (a total of $573,527). Plaintiff has already received awards at $266,253 and $88,105. Defendant denies financial responsibility for the remaining costs of $219,169.

It is true that plaintiff had the burden of proving that the costs incurred were due to the constructive changes caused by defendant's defective specifications. The Board believed that plaintiff had not met this burden. We hold otherwise.

The Government's total argument rests upon the fact that its auditor "adjusted" his initial calculation by disallowing 22,762 labor hours, alleging "inefficiency" on the part of plaintiff. Yet at the quantum trial the same auditor, under cross-examination, stated that he did *not* have any evidence that Teledyne was inefficient.

Thus, this case involves a very unique set of circumstances. The dollar amounts are not disputed; a previous Board determination has found that the Government was at fault and did provide defective specifications. Teledyne is confronted with an accusation that some of its costs should be disallowed. However, no reason whatsoever has been given as to *why* these costs should be disallowed. Other than the defective specifications, all other possible reasons for these

additional costs have been eliminated. In requiring plaintiff to prove still more (more than it has already proven), in the absence of evidence by the Government as to why the costs should be disallowed, the Board, in effect, applied a standard of proof approaching "beyond a reasonable doubt."[8] As a matter of law, applying the correct standard at the Board level (that of "preponderance of the evidence"[9]) to these unusual facts, the result would have favored plaintiff. Since no other result could be reached on these facts under the correct standard, we hold for plaintiff. *Grumman Aerospace Corp. v. United States*, 587 F.2d 498 (Ct.Cl., 1978); *Douglas v. United States*, 576 F.2d 887, 895, 217 Ct.Cl. —— —— —— n. 26 (1978); *Sherwin v. United States*, 436 F.2d 992, 1002, 193 Ct.Cl. 962, 979 (1971); *Maxwell Dynamometer Co. v. United States*, 386 F.2d 855, 870, 181 Ct.Cl. 607, 631 (1967).

Accordingly, after careful consideration of all parties' submissions, and oral argument, plaintiff's motion for summary judgment as it pertains to parts III and IV (interest) of the Trial Judge's opinion is denied. Defendant's cross-motion thereto is granted. Plaintiff's motion for summary judgment as it pertains to part II of the Trial Judge's opinion is granted, and defendant's cross-motion thereto is denied. Judgment is entered for plaintiff in the amount of $219,169.

---

6. Plaintiff's books and records were found by Defense Contract Audit Agency (DCAA) auditors to have been maintained in proper fashion and in strict accordance with accepted accounting standards.

7. In estimating "should have" costs (costs if specifications had not been defective) both plaintiff and DCAA used the same method, same computer, and same learning curve, and arrived at almost identical "should have" figures.

8. Because the changes were constructive in nature, plaintiff had no separate set of books and records for costs required by the defective specifications.

9. The Board has itself recognized its own "preponderance" standard in *Universal Transistor Products Corp.*, ASBCA No. 5317, 59–2 BCA ¶ 2414.