**METRIC CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–954 C.

United States Court of Federal Claims.

Sept. 3, 2008.

Steven D. Meacham, Seattle, WA, for plaintiff.

Ellen M. Lynch, United States Department of Justice, with whom were Gregory G. Katsas, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Harold D. Lester, Jr., Assistant Director, Washington, D.C., for defendant.

## OPINION

BUSH, Judge.

Metric Construction Company, Inc. (Metric) seeks $138,845.35 for attorney's fees and other litigation expenses it incurred in the subject matter. The details of the underlying case are set forth in the court's post-trial opinion, *Metric Construction Co. v. United States,* 80 Fed.Cl. 178 (2008) (*Metric II* ). Metric's application for fees and expenses has been fully briefed by the parties, and oral argument was neither requested by the parties nor required by the court. Because the government's position during this dispute was substantially justified, the court denies plaintiff's application.

## BACKGROUND

In 1999, Metric was awarded Contract No. DACA05–99–C–0030 (contract) to construct the Deployable Medical Systems Warehouse (warehouse) at Hill Air Force Base in Utah. Compl. at 2. When the warehouse roof developed serious leaks, the United States Army Corps of Engineers (Corps) required Metric to install a new roof. Metric's claims before this court stemmed largely from the costs Metric incurred repairing water damage from the roof leaks, replacing damaged property in the warehouse and installing the second roof. On March 31, 2004, Metric submitted a certified claim for $2,173,091.85 to the Corps for these costs, but never received a final decision from the contracting officer.

Metric filed suit in this court on June 7, 2004, and pled three theories of entitlement to relief: breach of contract, constructive change/extra work, and breach of implied warranty. These claims survived defendant's motion for summary judgment, primarily because of factual disputes related to the Corps' design of structural steel underlying the roof and the issue of whether the Corps' design specifications and communications with Metric, particularly in its response to Request for Information 173 (RFI 173), misrepresented information critical to proper roof installation. *See Metric Constr. Co. v.*

*United States,* 73 Fed.Cl. 611, 614–17 (2006) (*Metric I* ).

Trial was held in Seattle, Washington in March 2007. The parties stipulated that Metric's incurred costs related to the first roof's failure totaled $2,100,340. Because of the parties' cooperation and the narrowing of relevant issues in dispute, the presentation of evidence once estimated to require eight to ten days was completed in a three day trial. Following post-trial briefing, the court awarded Metric an equitable adjustment to the contract of $1,323,214.20, plus interest. *See Metric II,* 80 Fed.Cl. at 196. Metric thus obtained more than half of the monetary relief it originally sought from the Corps and in this suit, and more than half of the incurred costs figure to which it stipulated at trial.

## DISCUSSION

### I. Overview of EAJA

The Equal Access to Justice Act (EAJA), codified at 28 U.S.C. § 2412 (2000), is a "fee-shifting" statute. *Hubbard v. United States,* 480 F.3d 1327, 1333 (Fed.Cir.2007). Although EAJA is a waiver of sovereign immunity that must be narrowly construed, the court must give effect to the waiver that Congress has afforded litigants against the United States. *See Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000) (noting that "[a]s a waiver of sovereign immunity, the EAJA is interpreted narrowly[,][b]ut this is not a talisman for permitting the government to avoid liability in all cases") (citing *Ed A. Wilson, Inc. v. Gen. Servs. Admin.,* 126 F.3d 1406, 1408 (Fed.Cir.1997)). "A party that prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees, court costs, and other expenses." *Melkonyan v. Sullivan,* 501 U.S. 89, 91, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (citing 28 U.S.C. § 2412). Certain criteria must be met by the applicant, including "timeliness of the application," *id.* at 103, 111 S.Ct. 2157, not exceeding the maximum net worth for individuals or corporations, *see Bazalo v. West,* 150 F.3d 1380, 1384 (Fed.Cir.1998) ("The statute requires that the party seeking fees show that he is [financially] eligible to receive an award

under the statute."), and "prevailing party" status, *see Rice Servs., Ltd. v. United States,* 405 F.3d 1017, 1025 (Fed.Cir.2005) (noting that "to demonstrate that it is a 'prevailing party,' an EAJA applicant must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those") (citations omitted).

■ The United States Court of Appeals for the Federal Circuit has stated that

[t]he EAJA statute provides that a trial court must award attorney's fees where: (i) the claimant is a "prevailing party"; (ii) the government's position was not substantially justified; (iii) no "special circumstances make an award unjust"; and (iv) the fee application is timely submitted and supported by an itemized statement.

*Libas, Ltd. v. United States,* 314 F.3d 1362, 1365 (Fed.Cir.2003) (citing 28 U.S.C. § 2412(d)(1)(A)-(B); *Comm'r, INS v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)). As this list makes clear, the government may raise a defense, for which it bears the burden of proof, that its position in the controversy was "substantially justified." *Id.* (noting that the language of § 2412(d)(1)(A) shows "that the government bears the burden of proving its position was substantially justified") (citing *Neal & Co. v. United States,* 121 F.3d 683, 686 (Fed.Cir.1997)). Judicial review of this defense focuses on both "the actual merits of the government's litigating position," *id.* (citing *United States v. Hallmark Constr. Co.,* 200 F.3d 1076, 1079–80 (7th Cir.2000)), and the actions or inaction of the government agency in its consideration of the claim giving rise to the litigation in this court, 28 U.S.C. § 2412(d)(1)(B), (d)(2)(D).

### II. Timeliness, Corporate Eligibility, and Prevailing Party Status

The court issued its judgment on January 10, 2008, and Metric filed its EAJA application on March 31, 2008. Metric's application is timely pursuant to 28 U.S.C. § 2412(d)(2)(G). Metric states that it has had fewer than 500 employees and less than

$7,000,000 in net worth from the date it filed suit in this court, and defendant does not challenge these facts. Application ¶¶ 4–5. Thus, Metric is an eligible "'party'" under the statute. 28 U.S.C. § 2412(d)(2)(B). Finally, defendant does not contest, and the facts show, that Metric was a "prevailing party" for EAJA purposes. *See Rice Services*, 405 F.3d at 1026 (noting that "[e]nforceable judgments on the merits" confer prevailing party status on litigants against the United States) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).

## III. Whether the Government's Position Was Substantially Justified

The next question before the court is whether the government's position in this controversy was substantially justified. The parties disagree on this point. Plaintiff asserts that both the Corps' failure to issue a final decision on Metric's claim, and the government's litigation position in the subject matter, lack substantial justification. Application ¶ 2. Defendant, in the briefest possible manner, recapitulates the primary legal arguments it relied upon in this litigation, and asserts that these arguments were reasonable and substantially justified. Def.'s Resp. at 4. Plaintiff suggests that defendant's response brief "falls woefully short of satisfying the government's burden of establishing that its overall litigation position was substantially justified."[1] Pl.'s Reply at 2.

### A. Standard of Review for the Government's Substantial Justification Defense

 The test for whether the government's position during the dispute was substantially justified is whether that position was reasonable. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (defining the EAJA term "substantially justified" to mean "justified to a degree that could satisfy a reasonable person"). In other words, the government's position must have had "a reasonable basis in law and fact" for the "substantial justifica-

tion" defense to succeed. *Id.* at 566 n. 2, 108 S.Ct. 2541. Both the agency action or inaction and the litigation conduct of the government are considered to constitute a singular position, to be reviewed as a whole. *See Jean*, 496 U.S. at 159, 110 S.Ct. 2316 (stating that "the court need make only one finding about the justification of [the government's] position"); *Doty v. United States*, 71 F.3d 384, 386 (Fed.Cir.1995) (stating that in EAJA disputes, "the term 'position of the United States' refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position") (citation omitted); *Chiu v. United States*, 948 F.2d 711, 715 (Fed.Cir.1991) ("[T]rial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact.").

As to the government's pre-litigation conduct, the court reviews the totality of the circumstances of the agency's consideration of a claim:

> Thus, whether the test for substantial justification at the administrative stage is expressed as requiring a court to examine the "totality of the circumstances" or the "relevant, determinative circumstances," the court's inquiry must focus on the circumstances pertinent to the position taken by the government on the issue on which the claimant prevailed, such as the state of the law at the time the position was taken.

*Smith v. Principi*, 343 F.3d 1358, 1363 (Fed. Cir.2003). Similarly, the court reviews the government's litigation position by examining the totality of the circumstances of the prosecution of the case in this court. *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 253 (Fed.Cir.1985) ("The reasonableness of the government's litigation position is determined by the totality of circumstances...."). In the end, the court must exercise its discretion and judgment in determining whether the government's overall position was reasonable. *See Chiu*, 948 F.2d at 715 n. 4 (noting that the review of EAJA's substantial justification defense by the trial

---

1. Defendant's counsel was assigned this case after post-trial briefing was complete.

court "is quintessentially discretionary in nature [and that] [i]t is for the trial court to weigh each position taken and conclude which way the scale tips").

Although the government bears the burden of proof for showing the reasonableness of its position in the dispute, the court has some discretion in its review of the factual history of the matter. *Cf. RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1290 (Fed.Cir.1999) ("The trial judge enjoys considerable discretion to determine eligibility for an EAJA award.") (citing *Chiu*, 948 F.2d at 715 n. 4). If the government fails to proffer any evidence of the "substantial justification" of its position, the court can either find for plaintiff or "focus on the actual merits of the government's litigating position" as shown by the "record before the trial court." *Libas*, 314 F.3d at 1366. In doing so, the trial court should, however, consider the plaintiff's "expectation in an award of fees." *Id.* (citing *Neal*, 121 F.3d at 686). Thus, the court must assess whether the government maintained a reasonable position, based on the facts and law governing the dispute, and keep in mind plaintiff's expectation that fees will be awarded unless the government successfully raises a defense of its position that is at least on point. *See Baldi Bros. Constructors v. United States*, 52 Fed.Cl. 78, 82 (2002) ("Defendant cannot prove that the Government's conduct was substantially justified when it does not address its conduct at all."); *Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 6–7 (1990) ("The United States Court of Appeals for the Federal Circuit has interpreted the Supreme Court's reasonable basis formulation as a deferential threshold. The Federal Circuit generally has awarded attorney fees under EAJA only where the Government offered no plausible defense, explanation, or substantiation for its action.") (citations omitted).

### B. Whether the Government's Position was Substantially Justified in this Case

It is important to note that the substantial justification inquiry differs from the court's resolution of plaintiff's claim on the merits. *See Pierce*, 487 U.S. at 569, 108 S.Ct. 2541 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."); *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467 (Fed.Cir.1988) ("The decision on an award of attorney fees is a judgment independent of the result on the merits, and is reached by examination of the government's position and conduct through the EAJA 'prism' ") (citation omitted). In particular, the court's critical characterization of the government's arguments during the merits phase is not dispositive of the "substantial justification" issue in the fee application phase of the litigation. *See Lion Raisins, Inc. v. United States*, 57 Fed.Cl. 505, 513 (2003) (stating that "neither the outcome of the underlying action nor the court's previous characterization of the Government's position is dispositive on the issue of substantial justification") (citing *RAMCOR*, 185 F.3d at 1290). Rather than focusing on the court's comments in its post-trial opinion, *see* Pl.'s Resp. at 3–6, the government's position must be viewed through the EAJA lens: was the government's treatment of plaintiff's claim, both at the agency level, and at the litigation level, "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541. This inquiry can be logically divided into three parts in this instance: the Corps' treatment of Metric's certified claim for $2,173,091.85, the government's litigation of plaintiff's suit through the time of the court's decision on defendant's motion for summary judgment, and finally, the government's conduct throughout trial activities, up until the time the court issued *Metric II* on January 7, 2008.

### 1. No Final Decision by the Corps on Metric's Claim

The Contract Disputes Act, 41 U.S.C. § 601–613 (2000), contemplates scenarios where a contracting officer will not issue a final decision in response to a claim by a government contractor. *See id.* § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying

the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter."). This failure to issue a final decision is referred to as a "deemed denial." *See, e.g., Ryste & Ricas, Inc. v. Harvey,* 477 F.3d 1337, 1338 (Fed.Cir.2007). Contractors file suits in this court as a matter of course if the requisite period of time has elapsed after the submission of their claims to a contracting officer. *See, e.g., Maki v. United States,* 13 Cl.Ct. 779, 782 (1987) ("Thus, rather than providing that the contractor is entitled to the entirety of its certified claim, the controlling statute ... merely provides that the claim will be deemed denied and that the contractor can, through appeal or suit, contest that denial. Once such an appeal or suit is instituted, the United States is permitted to contest a contractor's entitlement to the damages sought.") (citing 41 U.S.C. § 605(c)(5)).

■ The court has found no authority which states that a "deemed denial" by a contracting officer is a *per se* unreasonable legal position; on the contrary, EAJA applications based on successful challenges to deemed denials have been rejected because the government's position was substantially justified. *See, e.g., Application of R&B Bewachungagesellschaft mbH,* ASBCA No. 42221, 93–3 BCA ¶ 26010 (Apr. 23, 1993). As the Armed Services Board of Contract Appeals has stated, deemed denials function much like any other denial of a claim and are not necessarily indicative of an unjustified government position:

> Appellant further stresses the failure of the contracting officer to issue a decision. We see no reason to conclude from such a failure that the Government's position was not substantially justified, especially since there is no obvious distinction between an appeal to the Board from an actual decision and an appeal from a "deemed denial." Both derive from the same statutory provision, 41 U.S.C. § 605, and both constitute "appeals."

*Zinger Constr. Co.,* ASBCA No. 31858, 88–3 BCA ¶ 20978 (June 17, 1988). Thus, the proper question is whether, in the circumstances of this case, the Corps was substantially justified in its deemed denial of Metric's certified claim.

■ Metric's certified claim was submitted to the contracting officer on March 31, 2004. In three pages of text, Metric described the factual underpinnings of its claim, and the legal theories supporting its claim. TX 43.[2] At issue were the designs for the structural steel for the warehouse and the roofing system, written and verbal communications to Metric via specifications and the Corps' response to Metric's request for information, causation of the leaks in the first roof, and the quantum of the cost of repairs undertaken by Metric at the direction of the Corps. *Id.* The design of the structural steel of the warehouse, the performance of the roof, the interactions between the Corps and Metric, and the causation issue all presented factual issues of considerable complexity. The court finds that the Corps' deemed denial of Metric's claim was a reasonable action based on its initial analysis of these facts, which could have just as easily pointed to liability on the part of the contractor, as to liability on the part of the government.

Turning to the law governing such a dispute, the Corps was entitled to rely on precedent assigning the burden of proof to a contractor asking for an equitable adjustment to a contract based on a claim of defective specifications. *Teledyne McCormick–Selph v. United States,* 218 Ct.Cl. 513, 588 F.2d 808, 810 (1978) ("It is true that plaintiff had the burden of proving that the costs incurred were due to the constructive changes caused by defendant's defective specifications."); *Ralph L. Jones Co. v. United States,* 33 Fed.Cl. 327, 331 (1995) ("[T]he government contractor seeking an equitable adjustment bears the burden of proving liability, causation, and resultant injury.") (citations omitted). Further factual development would be required to determine whether the specifications for the structural steel were indeed defective. Similarly, Metric's allegation that it reasonably relied upon the specifications and the Corps' response to its request for information could not be confirmed without further development of the facts. *See Scott*

---

**2.** TX and DX refer to exhibits admitted during the March 2007 trial.

*Timber Co. v. United States,* 333 F.3d 1358, 1369 (Fed.Cir.2003) (holding that a "reasonableness issue is intensely factual"). For these reasons, the Corps could reasonably oppose Metric's claim because the bases for these claims were as yet unproven and the applicability of legal doctrines supporting an equitable adjustment was far from certain.

### 2. Bases in Law and Fact for the Government's Arguments during Summary Judgment Proceedings

In 2006, the government moved for summary judgment, arguing that the warehouse's roof specifications were performance specifications, and that Metric was therefore responsible for the roof's performance problems. In defendant's view, any problems that were related to the structural steel of the building were caused by Metric's choice of an incompatible roof. In its reply brief, the government countered plaintiff's arguments alleging that Metric reasonably relied on defective specifications or on communications by the Corps during construction. To this end, the government cited various contract provisions and caselaw outlining a contractor's duties. The government also suggested that any leak problems caused by insulation compressed by the roof were entirely Metric's fault, because insulation for the roof also involved a performance specification. Finally, the government argued that no genuine issues of material fact prevented judgment in its favor.

The court denied the government's motion in *Metric I.* The court conceded that summary judgment "serves judicial economy, and saves time and expense when a trial is not needed." *Metric I,* 73 Fed.Cl. at 612. In the end, however, the court disagreed with the government's contention that there were no material facts in dispute. This was a close question, however, and the government's position had a reasonable basis in both fact and law. Furthermore, the government's summary judgment motion helped distill plaintiff's two valid theories of recovery, defective specifications and government misrepresentation, which were then ripe for trial. *See id.* at 613 ("Here, Metric has alleged facts which implicate, in some measure, defective specifi-

cations and government misrepresentation."). The government's position was thus, in this respect, substantially justified.

Regarding Metric's opposition to the government's dispositive motion, "[t]he court acknowledge[d] that Metric ha[d] presented very weak evidence on the defective nature of the Corps' specifications for the structural steel and insulation, but that evidence is more than merely colorable." *Id.* at 614. Plaintiff thus met its burden and escaped summary judgment on that issue. The court relied in part on caselaw suggesting that even if the government has met its burden for a grant of summary judgment, a court may, in its discretion, proceed to trial to fully investigate the government's liability in complex construction disputes. *See id.* (citations omitted).

As to the government misrepresentation claim, this issue depended not just on contract provisions, the specifications themselves, and the record of communications during construction, as defendant argued, but also on how these documents and communications should have been reasonably interpreted by Metric. Plaintiff, relying partially on what the court described as "limited evidence," identified genuine issues of material fact related to its alleged reliance on government misrepresentation. *Id.* at 615. The government relied on binding precedent which suggests that a contractor has a duty to inquire into ambiguous instructions before proceeding with construction. *Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1580 (Fed.Cir.1993). Without live testimony and cross-examination, however, the issue of misrepresentation could not be resolved. *See Metric I,* 73 Fed.Cl. at 615–17 & nn. 4–5. Although the government had certain relevant facts and supportive precedential authority in favor of its position, a decision resolving plaintiff's theory of the case required trial evidence. The court finds that the government's summary judgment position, although unsuccessful, was substantially justified by both fact and law.

### 3. Bases in Law and Fact for the Government's Arguments during Trial Proceedings

Before trial, defendant engaged an expert who surveyed the joist girders underlying

the failed first roof and the results of this survey proved instrumental in the court's finding that approximately 70% of the joist girders had excessive camber. *See Metric II*, 80 Fed.Cl. at 195. Defendant stipulated that the joist girders had been manufactured in accordance with the specifications in the contract. *Id.* at 187. Defendant also stipulated to the damages Metric incurred as a result of the leaks in the first roof. *Id.* at 195. Defendant's experts were found to be credible, *id.* at 181, and the testimony defendant's witnesses provided at trial was helpful to the court.[3] Thus, the court finds that defendant's presentation of evidence at trial was reasonable.

Although defendant's primary theory of the case did not prevail at trial, defendant was able to present evidence that was relevant and supportive of its arguments. In essence, if defendant could show that the design specification of the underlying steel was not defective, then Metric's failure to provide a *functioning* roof would be, absent any misrepresentation by the government, entirely Metric's responsibility. Unfortunately for defendant's case, plaintiff's experts and witnesses were persuasive and proved that the design specifications were defective. *See Metric II*, 80 Fed.Cl. at 187 ("The preponderance of the evidence presented at trial supports Metric's contention that the dead loads on the Corps' drawings were erroneous. . . .").

Similarly, if defendant could show that Metric did not reasonably rely on the joist girder specifications and the communications from the Corps' regarding the excessive camber in the joist girders, plaintiff's misrepresentation theory would have failed to establish the government's liability for the first roof's leaks. The court determined that the joist girder specifications did misrepresent important information, and turned to the question of whether Metric reasonably relied on both the defective specifications and the Corps' communication about the potential problem of excessive camber in the joist gird-

ers. *See id.* at 190 ("The issue of whether or not Metric reasonably relied on this material misrepresentation [of the joist girder specifications] to its detriment can only be resolved by reviewing the Corps' response to RFI 173, Metric's inquiry into the residual camber in the joist girders that might impair the functioning of the SuperLok roof, and the events that followed Metric's receipt of the Corps' response to RFI 173."). The Corps' response to RFI 173 "permit[ted] a variety of interpretations," and the reasonableness of Metric's reliance on this somewhat unclear exchange of information presented a close question of law and fact. *Id.* at 191–92. Ultimately, the court found, based on persuasive testimony from plaintiff's witnesses, that Metric's interpretation of this communication from the Corps was "reasonable conduct" and that Metric had "reasonably inquired" into a potential structural problem affecting the warehouse's first roof. *Id.* at 192.

Defendant fared better in proving that excessive camber was not the sole cause of leaks in the first roof. The court found that a portion of Metric's stipulated costs related to the failure of the first roof could not be attributed to the government. Instead of receiving the total stipulated amount of incurred costs, $2,100,340, Metric received $1,323,214.20, plus interest. Thus, defendant achieved not insignificant defensive success in this litigation based on the arguments and evidence it presented at trial. Reduction of a damages award due to defensive tactics is generally not dispositive of the "substantial justification" issue. *See The Sweetwater v. United States*, 75 Fed.Cl. 214, 216 (2007) (noting that the government's EAJA arguments based on its success defending against a portion of a plaintiff's claims "is more appropriately considered as a request for apportionment" than as proof of the substantial justification of the government's litigation position). Here, however, the strength of the government's alternative causation arguments and evidence tend to support the court's view that the government's position at

---

**3.** Defendant attempted but was not permitted to present evidence concerning the second roof's alleged problems. Defendant's proposed use of such evidence was "superficially attractive," but rejected for lack of notice and relevance. *Metric*

*II*, 80 Fed.Cl. at 183. Although defendant's proposed introduction of evidence was rejected, the court does not find defendant's objective of discrediting plaintiff's theories of causation regarding the first roof's problems to be unreasonable.

454

trial was more than tenuous, and reasonable. *See Luciano Pisoni,* 837 F.2d at 469 (finding the government's position was substantially justified where the government "did not persist in pressing a tenuous factual or legal position").

Overall, the government's position at trial and post-trial was substantially justified. Even if the court was not persuaded that Metric bore most of the responsibility, due to a performance specification in the contract, for the leaks in the warehouse's first roof, defendant's position was reasonably based on relevant evidence and relevant authority. Trial was required before the court could determine whether or not plaintiff would prevail on its claim. *See Broad Ave. Laundry and Tailoring v. United States,* 693 F.2d 1387, 1392 (Fed.Cir.1982) (holding that the government's position for EAJA purposes was substantially justified because, in part, the plaintiff's success in the suit could not "be described as foreordained").

From the perspective of a reasonable person, the government's position at trial was justified, as it was during the entirety of this dispute. Having reviewed the totality of the circumstances, the court finds that the government's position was substantially justified under EAJA. It was reasonable for the government to have litigated this dispute to its conclusion.

Finally, the court has reviewed defendant's response to plaintiff's EAJA application to see if the government has "advance[d] any reasoning showing its position was substantially justified." *Libas,* 314 F.3d at 1366. Defendant has met, although barely, this minimum standard of at least responding to an EAJA application and plaintiff's allegation that the government's position was not substantially justified. Defendant identifies the main arguments it presented in this litigation, noting first its undisputed contention that the roof product chosen by Metric involved a performance specification, and the government's theory that Metric was therefore liable for the roof's failure. Defendant also identifies the government's argument that the joist girder specifications did not represent actual loads that the building would experience, and thus that there was no

misrepresentation in the contract documents. Finally, defendant identifies its theory that Metric "improperly relied" on the Corps' response to RFI 173, citing Metric's roofing subcontractor's warnings about excessive camber in the joist girders. Def.'s Resp. at 4. Defendant asserts that these positions were all reasonable, and that its overall position was reasonable.

Defendant's brief contains no buttressing arguments other than those referred to here, and only one citation to one page of *Metric II.* As compared to the court's discussion of the government's "substantial justification" defense in this case, *supra,* defendant's brief skates very lightly over the topic of the reasonableness of the government's position. Defendant thus comes perilously close to failing to offer *any* reasoning in support of its contention that the government's position in this litigation was substantially justified. The court would not recommend such cursory treatment of the "substantial justification" defense by government counsel in future cases.

However, even if defendant had offered no reasoning in support of its substantial justification defense, the court believes that *Libas* would authorize a rejection of the EAJA award sought here by plaintiff. The government's position made sense at all times during this dispute because close questions of fact precluded an easy victory for either side. In the end, Metric received about 63% of the stipulated costs it incurred due to the failed first roof, but Metric might have received nothing had it not been for the testimony of key witnesses at trial. Plaintiff's expectation of an EAJA award, in the circumstances of this dispute, must have been weak, knowing that the court might and probably would discern the substantial justification of the government's position even if defendant raised only a perfunctory, or no, substantial justification defense. Given these realities, EAJA does not require the court to shift the expense of this litigation to defendant.

## CONCLUSION

Although Metric was the prevailing party in this suit, the government's position was, at all times during the course of this dispute,

substantially justified. Because the government is entitled to a defense available under EAJA, the court does not grant plaintiff's application for attorney's fees and other litigation expenses.

Accordingly, it is hereby **ORDERED** that:

(1) Plaintiff's Application for Fees Under the Equal Access to Justice Act, filed March 31, 2008, and as amended on July 14, 2008, is **DENIED**; and

(2) Each party shall bear its own costs.